# EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

| | |
|---|---|
| POSADAS DE PUERTO RICO ASSOCIATES, L.L.C., | Index No. |
| Plaintiff, | |
| v. | **SUMMONS** |
| CONDADO PLAZA ACQUISITION, LLC; CONDADO PLAZA ACQUISITION LAGOON, LLC; and CONDADO PLAZA ACQUISITION OCEAN, LLC, | |
| Defendants. | |

**TO:**

> Condado Plaza Acquisition, LLC
> 1350 Broadway
> New York, New York 10018

> Condado Plaza Lagoon, LLC
> 1350 Broadway
> New York, New York 10018

> Condado Plaza Acquisition Ocean, LLC
> 1350 Broadway
> New York, New York 10018

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis for venue is the parties' agreement, pursuant to which Defendants irrevocably submitted to the exclusive jurisdiction of the Supreme Court of the State of New York and irrevocably and unconditionally waived any objection to the laying of venue in the Supreme Court of the State of New York.

KE 68920059.15

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 3 of 34

Dated: May 18, 2020

KIRKLAND & ELLIS LLP

/s/ Aaron Marks
Aaron Marks, P.C.
Joseph M. Sanderson
Jace A. Cearley
Giselle Sedano
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: aaron.marks@kirkland.com
        joseph.sanderson@kirkland.com
        jace.cearley@kirkland.com
        giselle.sedano@kirkland.com

*Counsel for Plaintiff Posadas de Puerto Rico
Associates, L.L.C.*

2

KE 68920059.15

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

| | |
|---|---|
| POSADAS DE PUERTO RICO ASSOCIATES, L.L.C., | Index No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CONDADO PLAZA ACQUISITION, LLC; CONDADO PLAZA ACQUISITION LAGOON, LLC; and CONDADO PLAZA ACQUISITION OCEAN, LLC, | |
| Defendants. | |

KE 68920059.15

Plaintiff Posadas de Puerto Rico Associates, L.L.C. ("Posadas"), by and through its undersigned counsel, for its complaint against Defendants Condado Plaza Acquisition, L.L.C. ("CP Acquisition"), Condado Plaza Acquisition Lagoon, LLC ("CP Lagoon"), and Condado Acquisition Plaza Ocean, LLC ("CP Ocean," and together with CP Acquisition and CP Lagoon, "Defendants" or "Buyer"), alleges as follows:

## NATURE OF THE ACTION

1.      This action arises out of Buyer's breach of an agreement whereby Posadas agreed to sell, and Buyer agreed to buy, the real estate of the Condado Plaza Hilton (the "Hotel") in San Juan, Puerto Rico, which is comprised of two separate hotel towers, and certain related assets.

2.      Under the terms of the Agreement of Purchase and Sale that governed the transaction (the "Agreement," "Purchase Agreement" or "PSA"), Buyer agreed to pay $31,000,000 and execute all of the closing documents on December 31, 2019 (the "Initial Closing Date"). Aside from the technicalities of conveyancing and certain local tax matters, the Agreement was governed by New York law and the parties agreed to exclusive jurisdiction in the Supreme Court of the State of New York or the United States District Court for the Southern District of New York.

3.      After Buyer could not complete the transaction on December 31, 2019 as planned, it exercised a one-time right to extend the Initial Closing Date until February 28, 2020. Thereafter, Buyer indicated that it required additional time to close, principally in order to attempt to procure debt financing or find equity co-investors to join them in the purchase (even though there was no financing condition for closing). In a good faith effort to accommodate Buyer, Posadas agreed to a series of three amendments to the Agreement between February 28, 2020 and March 17, 2020, with each amendment extending the closing date for the transaction in exchange for Buyer granting certain concessions so that Posadas could be sure that Buyer still intended to close. Among other provisions, Buyer agreed in the Second Amendment on March 5, 2020 to waive all conditions

2

precedent to closing, to post an additional million dollars in Earnest Money, as defined below, and to agree to the escrow agent's immediate release of the Earnest Money to Posadas if Buyer failed to close. Each of the three amendments reaffirmed that the original Agreement, except as expressly amended or modified, remained valid and binding.

4.      As explained in more detail below, as part of the third and final amendment to the Agreement, which was executed on March 17, 2020—*after* the coronavirus crisis had overwhelmed the United States—the parties agreed to reschedule closing to the later of April 17, 2020 or five business days after law offices and notaries were permitted to reopen in Puerto Rico. This reopening occurred on May 4, 2020. The Closing was thus set to occur five business days later, on May 11, 2020.

5.      As the final closing date approached, however, Buyer remained either unable or unwilling to uphold its end of the bargain. Yet, rather than request or negotiate another extension, Buyer demanded a 50% reduction in price and raised a number of spurious arguments asserting that it was not obligated to close the transaction in the days leading up to the final closing date.

6.      Despite Buyer's anticipatory repudiation of the Agreement, as amended, Posadas waited until the Closing Date to see if Buyer would honor the Agreement. In addition, Posadas continued to prepare for the Closing by, among other things, causing an authorized signatory to sign certain Conveyance Documents in the presence of a notary public in Puerto Rico, as contemplated by Section 2.3(b) of the Agreement. When Buyer failed to appear at the Closing and complete the transaction on May 11, 2020, it materially breached the Agreement, as amended. In light of Buyer's material breach, Posadas exercised its right to terminate the Agreement, entitling it to liquidated damages in the amount of $5,100,000 plus accrued interest in non-refundable

3

KE 68920059.15

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 7 of 34

INDEX NO. E2020003156
RECEIVED NYSCEF: 05/18/2020

Earnest Money deposited in an escrow account administered by Fidelity National Title Insurance Company (the "Escrow Agent").

7.      Unbeknownst to Posadas, however, Buyer had taken advantage of Posadas' good faith decision to wait and see whether Buyer would complete the transaction on May 11, 2020. Without informing Posadas, and in violation of the exclusive jurisdiction clause in the Agreement (providing for jurisdiction only in the New York courts), Buyer commenced litigation in Puerto Rico and misled the court there into granting *ex parte* relief including a *lis pendens* that clouded Posadas' title in the land underlying the Hotel (rendering it unmarketable to new potential buyers). Among other things, Buyer attached the *original* Agreement to its filing but omitted all three Amendments, thus hiding from the Puerto Rico court the fact that most of their arguments were expressly waived by the Second Amendment and that they had repeatedly ratified the contract, even after the emergency orders were in place. Further, ignoring the Agreement's governing law clause, Buyer sought to have the Puerto Rico court apply a doctrine under Puerto Rico contract law that they assert permits the court to reduce the sale price to whatever price that the court deems "fair."

8.      Buyer's commencement of litigation in Puerto Rico and invocation of the laws of Puerto Rico breached the express terms of the Agreement, which provided that it was to be "governed by, interpreted under, and construed and enforced in accordance with, the laws of the State of New York," except as to certain technicalities of conveyancing real property and local tax matters, and by which Buyer agreed that it "irrevocably submits to the ***exclusive jurisdiction*** of . . . the Supreme Court of the State of New York . . . for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated thereby." (PSA §§ 14.13, 14.14 (emphasis added).)

KE 68920059.15

9.      Thus, when Posadas notified Buyer and Escrow Agent on May 11, 2020, that it was terminating the Agreement and demanded disbursement of the Earnest Money, Buyer purported to "reject" the termination based upon the existence of the Puerto Rico Action and the *ex parte* preliminary relief obtained from the court in connection therewith, and objected to the Escrow Agent disbursing the Earnest Money (which further breached the Second Amendment to the Agreement). As a result, the Escrow Agent has refused to disburse the $5,100,000 in Earnest Money until the parties resolve their dispute.

10.     In short, Buyer has materially breached the Agreement, as amended, in several respects. As a direct result, Posadas has been wrongfully deprived of the $5,100,000 plus accrued interest in Earnest Money, stripped of its right to market and sell the Hotel and its related assets to another buyer amid a volatile market, and denied its contractual right to litigate in New York. Because Defendants have refused to dismiss the litigation pending in Puerto Rico or honor the terms of the parties' Agreement, Posadas is left with no choice but to commence the instant action seeking equitable, declaratory, and monetary relief.

## JURISDICTION AND VENUE

11.     This Court has subject matter over this action pursuant to Article VI, Section 7(a) of the Constitution of the State of New York.

12.     This Court has personal jurisdiction over Defendants pursuant to CPLR 301 and General Obligations Law Sections 5-1401 and 5-1402 because Defendants "irrevocably submit[ted] to the exclusive jurisdiction of [] the Supreme Court of the State of New York . . . for the purposes of any suit, action or other proceeding arising out of [the Purchase and Sale] Agreement or any transaction contemplated [t]hereby." (PSA § 14.14.)

13.     Venue is proper pursuant to CPLR 501 because Defendants "irrevocably and unconditionally waive[d] any objection to the laying of venue of any action, suit or proceeding

5

KE 68920059.15

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
INDEX NO. E2020003156
NYSCEF DOC. NO. 1
20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
RECEIVED NYSCEF: 05/18/2020
Pg 9 of 34

arising out of [the Purchase and Sale] Agreement or the transactions contemplated [t]hereby in []

the Supreme Court of the State of New York." (PSA § 14.14.)

## PARTIES

14.    Plaintiff Posadas de Puerto Rico Associates, L.L.C. is a limited liability company

organized under the laws of the State of Delaware that owns the Condado Plaza Hilton in San Juan,

Puerto Rico.

15.    Defendant Condado Plaza Acquisition LLC is a limited liability company

organized under the laws of the State of Delaware with its principal office in New York,

New York.

16.    Defendant Condado Plaza Acquisition Lagoon LLC is a limited liability company

organized under the laws of the Commonwealth of Puerto Rico with its principal office in New

York, New York. It was formed to acquire the oceanfront tower of the Condado Plaza Hilton as

assignee of Defendant Condado Plaza Acquisition LLC.

17.    Defendant Condado Plaza Acquisition Ocean LLC is a limited liability company

organized under the laws of the Commonwealth of Puerto Rico with its principal office in New

York, New York. It was formed to acquire the lagoon-front tower of the Condado Plaza Hilton as

assignee of Defendant Condado Plaza Acquisition LLC.

## FACTUAL BACKGROUND

### A.  The Condado Plaza Hilton.

18.    The Hotel is a waterfront resort operated by its Property Manager, Hilton

Worldwide International Puerto Rico LLC ("Hilton"). Opened in 1963, the Hotel is located in the

vibrant Condado area of San Juan, Puerto Rico, where it overlooks the Atlantic Ocean and

Condado Lagoon. Given that the Hotel is conveniently located minutes away from cruise piers,

Old San Juan, and the Luis Muñoz Marín International Airport, and is within walking distance of

6

shopping, dining, museums, historic landmarks and recreational venues, it has historically been a favored choice of tourists, professionals, and international travelers.

19.     On or around July 10, 2019, Posadas began a process to market the Hotel and its related assets to potential buyers.

20.     Among those potential buyers was Platinum Capital Partners, Inc., the New York-based family office of Roys Poyiadjis.

21.     During the negotiations for the sale of the Hotel, Posadas' representatives discussed at length the as-is nature of the transaction—including, among other things, that the Hotel had not been fully renovated since suffering cosmetic damage during Hurricane Maria, and that the terms did not require Posadas to keep the hotel open.

22.     In the negotiations leading up to the Agreement, Mr. Poyiadjis repeatedly requested that the Agreement include multiple extension rights that, in aggregate, would permit CP Acquisition (the LLC he created for this purchase) to extend the Initial Closing Date until June 30, 2020. In the end, however, the parties agreed that the original Agreement would only provide CP Acquisition with a one-time right to extend the Agreement, as described in more detail below.

**B. Defendants Agree to Purchase the Hotel from Plaintiff.**

23.     On November 20, 2019, Posadas entered into the Agreement with CP Acquisition, by which Posadas agreed to sell, and CP Acquisition agreed to buy, the Assets[1]—the Hotel and various associated property—for $31,000,000 (the "Purchase Price"), which amount was to be paid by CP Acquisition to Posadas on the Closing Date. (PSA § 2.1.)

---

[1]     Unless otherwise specified, capitalized terms used herein have the meaning attributed to them in the PSA or the amendments thereto.

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. E2020003156

RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 11 of 34

24.    The term "Assets" is defined in Background Paragraphs A and B of the Agreement
to consist of numerous components, but principally the "Property" and the "Property-Related
Assets." In turn, the term "Property" is defined to include the buildings known as The Condado
Plaza Hilton, as well as the two parcels of land on which the Hotel is constructed, which are
described in more detail in Schedule A-1 to the Agreement. (PSA, Background ¶ A.) In turn, the
"Asset-Related Property" is defined to include certain enumerated rights, titles, and interests in (or
appurtenant to) land and intellectual property, among other things, that would be necessary or
useful to operating the Hotel. (PSA § 2.1(b).)

25.    Pursuant to Section 2.3(a) of the Agreement, the parties agreed that the sale and
purchase of the Assets (the "Closing") would take place on December 31, 2019 (the "Initial
Closing Date"). Under certain conditions, however, the parties had the ability to extend the Initial
Closing Date until no later than February 28, 2020 (the "Outside Closing Date"). Thus, the parties
agreed that the Closing would occur no later than the Closing Date—*i.e.*, the Initial Closing Date,
as extended (if extended) in accordance with the terms of Section 2.3(a). Specifically, Section
2.3(a) states:

> The closing of the sale and purchase of the Assets (the "Closing") shall take place
> on December 31, 2019 (the "Initial Closing Date"); provided, however, [Posadas]
> shall have the right to adjourn the Initial Closing Date from time to time to a date
> no later than February 28, 2020 (the "Outside Closing Date") upon written notice
> delivered to [CP Acquisition] for purposes of obtaining Seller's Tourism
> Exemption Concession as provided in Section 5.1(f), the Tax Ruling as provided in
> Section 5.1(g) and/or the Required Lender Consent as provided in Section 5.1(h);
> provided, further, [CP Acquisition] shall have a one-time right to adjourn the Initial
> Closing Date to a date no later than February 28, 2020 (the "Buyer's Outside
> Closing Date") upon the delivery of both written notice to [Posadas] and the
> Extension Deposit to the Escrow Agent at least five (5) Business Days prior to the
> Initial Closing Date (the Initial Closing Date, as the same may be extended
> hereunder being hereinafter referred to as the "Closing Date"). **TIME SHALL BE
> OF THE ESSENCE WITH RESPECT TO BUYER'S AND [POSADAS']
> OBLIGATIONS UNDER THIS AGREEMENT** (subject to such adjournments
> of the Closing Date as are expressly permitted by this Agreement, including,

8

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 12 of 34

> without limitation, Section 8.3(a)). The Closing Date shall in no event occur later than the later of (i) the Outside Closing Date and (ii) the Buyer's Outside Closing Date, as applicable, unless agreed in writing by the parties hereto.

(PSA § 2.3(a).)

26.    Likewise, Section 14.21 of the Agreement stated: "[Posadas] and Buyer agree that time is of the essence with respect to the obligations of [Posadas] and Buyer under this Agreement."

27.    To ensure that CP Acquisition honored the Agreement, and to provide liquidated damages if it failed to close, the PSA provided for CP Acquisition to transfer $3,100,000 (together with accrued interest thereon, the "Earnest Money") into an escrow account administered by the Escrow Agent. (PSA § 2.2(b).) If CP Acquisition and Posadas proceeded to Closing on the Closing Date in accordance with the terms of the Agreement, the Earnest Money would be credited against the Purchase Price. (PSA §§ 2.2(c), 2.3(b).) In contrast, if CP Acquisition materially breached or defaulted in its obligations under the Agreement, Posadas had the right to terminate the Agreement and the Escrow Agent was obligated to disburse the Earnest Money to Posadas as liquidated damages for CP Acquisition's breach. (PSA §§ 12.1(a), 12.1(d).) Accordingly, the parties agreed that "[t]he Earnest Money shall be non-refundable to [CP Acquisition]." (PSA § 2.2(b).)

## C. Defendants Seek an Extension of the Closing Date, Purportedly to Procure Debt Financing or Find Equity Investment Partners.

28.    On December 18, 2019, CP Acquisition delivered a formal notice informing Posadas that it was exercising its right to extend the Closing Date pursuant to Section 2.3(a) of the Agreement until February 28, 2020 (the Outside Closing Date). In order to obtain the extension, CP Acquisition also made an "Extension Deposit" of $1,000,000, which was to be treated as additional Earnest Money, in accordance with the terms of the Agreement. (PSA §§ 2.3(a), 2.2(b), 1.1.)

9

29.     Over the next several months, CP Acquisition repeatedly sought to extend the Closing Date for the sale. In these discussions, CP Acquisition repeatedly represented that it was attempting to find debt financing or equity co-investors for the Hotel and the related assets, and that it wished to delay the transaction until certain tax concessions could be received from the Puerto Rico Department of Treasury. Neither procurement of debt or equity financing nor Buyer obtaining tax concessions were conditions precedent to Buyer's obligation to consummate the transaction under the original Agreement (or under any of the Amendments), and, in any event, Buyer waived all conditions precedent to Closing under the Second Amendment.

30.     As the Outside Closing Date under the original Agreement approached, CP Acquisition again requested an extension, for the principal stated reason of seeking financing or co-investors.

31.     In a good faith attempt to accommodate CP Acquisition, Posadas agreed to enter into an amendment to the Agreement on February 28, 2020 (the "First Amendment"). Thereunder, the parties agreed to extend the Closing Date until March 6, 2020. (First Amendment § 1, Background ¶ A.) In connection with extending the Closing Date, the parties (i) confirmed that they had reviewed and approved the Closing Documents, and (ii) clarified that certain post-Closing covenants under Section 4.2(f) could not delay or preclude the Closing. (First Amendment § 3.)

32.     The First Amendment also made clear that the Agreement remained in full force and effect:

> Except as expressly amended, modified or superseded by [the First] Amendment, the terms of the Purchase Agreement shall remain in full force and effect and are hereby ratified by [Posadas] and [CP Acquisition]. Except as modified and amended by this Amendment, the Purchase Agreement and the respective obligations of [Buyer] and [Posadas] thereunder shall remain unmodified and in full force and effect.

(First Amendment § 6.)

10

KE 68920059.15

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
INDEX NO. E2020003156
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 14 of 34

33.     Therefore, aside from changing the Closing Date and clarifying the scope of certain post-closing obligations under Section 4.2(f) of the Agreement, all other terms and conditions of the Agreement were reaffirmed by the First Amendment. Thus, time continued to be of the essence in accordance with Sections 2.3(a) and 14.21 of the Agreement.

34.     Additionally, the same day that CP Acquisition signed the First Amendment, it assigned all rights under the Agreement to its affiliates CP Ocean and CP Lagoon, and CP Ocean and CP Lagoon expressly assumed all terms, obligations, covenants, and conditions under the Agreement. As required by the Agreement, the assignments made clear, notwithstanding the assignment and assumption, that CP Acquisition would continue to remain primarily liable under the Agreement, and the assignment and assumption did not limit, abrogate, or release CP Acquisition from its obligations under the Agreement. (*See also* PSA § 14.7(i) ("Buyer shall continue to remain primarily liable under this Agreement notwithstanding any such assignment or designation and no such assignment or designation shall limit, abrogate or release Buyer's obligations hereunder . . . .").)

### D. Defendants Seek and Obtain Further Extension of the Closing Date and Agree to Waive All Closing Conditions.

35.     As March 6, 2020 approached, Buyer again requested an extension for the principal stated reason of seeking debt financing or co-investors.

36.     Posadas again agreed to accommodate Buyer, and the parties entered into a second amendment to the Agreement on March 5, 2020 (the "Second Amendment"). Thereunder, Buyer acknowledged that "Buyer ha[d] no rights under the [Agreement, as amended by the First Amendment,] to extend the Scheduled Closing Date." (Second Amendment, Background ¶ B.)

37.     Buyer acknowledged that Posadas was "willing to permit one additional extension of the Scheduled Closing Date to March 17, 2020 … in consideration of (i) Buyer funding … an

11

KE 68920059.15

INDEX NO. E2020003156

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
RECEIVED NYSCEF: 05/18/2020

additional non-refundable $1,000,000 to Escrow Agent (the 'Additional Extension Deposit') and (ii) Buyer agreeing to the other terms and conditions of [the Second Amendment]." (Second Amendment, Background ¶ C.) Buyer also agreed that the Additional Extension Deposit "shall be included as part of the Earnest Money under the Purchase Agreement…." (Second Amendment § 1(b).)

38.    Importantly, to reassure Posadas that Buyer actually intended to close, the parties agreed that Buyer waived **_all_** of Posadas' pre-Closing obligations. Specifically, Section 2 of the Second Amendment states:

> Buyer hereby agrees that (i) Buyer has waived all conditions precedent to Closing, and (ii) notwithstanding anything to the contrary contained in the Purchase Agreement (including without limitation, Section 14.5(b)), in the event that the Closing does not occur on [March 17, 2020], (x) Escrow Agent shall immediately release the Earnest Money to Seller and (y) Buyer shall not have any right to object to the release of the Earnest Money to Seller.

39.    Thus, after the Second Amendment, Buyer had waived every condition precedent to Closing and unequivocally agreed that the Earnest Money would be immediately released as liquidated damages to Posadas if—_for any reason_—the Closing failed to occur on March 17, 2020.

40.    In addition, the Second Amendment again made clear:

> Except as expressly amended, modified or superseded by [the Second Amendment], the terms of the Purchase Agreement [as amended by the First Amendment] shall remain in full force and effect and are hereby ratified by [Posadas] and the Buyer. Except as modified and amended by this [Second] Amendment, the Purchase Agreement [as amended by the First Amendment] and the respective obligations of Buyer and [Posadas] thereunder shall remain unmodified and in full force and effect.

(Second Amendment § 6.)

41.    As a result, all other terms and conditions of the Agreement, as amended by the First Amendment, remained in full force and effect—and time continued to be of the essence pursuant to Sections 2.3(a) and 14.21 of the Agreement.

KE 68920059.15

**E. In Light of COVID-19 Emergency Orders in Puerto Rico, the Parties Agree to Reschedule Closing.**

42.     As the parties signed the First Amendment and the Second Amendment, the ongoing coronavirus pandemic continued to develop as COVID-19 spread throughout the world. In fact, before either the First Amendment or Second Amendment were executed, the United States Secretary of Health and Human Services had declared the pandemic a public health emergency under Section 319 of the Public Health Services Act, 42 U.S.C. § 247d, on January 31, 2020.

43.     On February 26, 2020, the Center for Disease Control confirmed that community spread was occurring in the United States.

44.     As the new Closing Date of March 17, 2020 approached, the public health situation continued to deteriorate.

45.     On March 11, 2020, the World Health Organization concluded that the spread of the coronavirus constituted a pandemic.

46.     On March 12, 2020, the Governor of Puerto Rico, Wanda Vázquez Garced, declared a state of emergency in Puerto Rico.

47.     The President of the United States declared a state of national emergency on March 13, 2020.

48.     And, on March 15, 2020, Governor Vázquez exercised her emergency powers to order the closure of nonessential government operations, businesses, and public accommodations in Puerto Rico, and ordered an island-wide curfew.

49.     In light of this order, notaries, and law offices were unable to operate in Puerto Rico, and the Closing could not proceed as scheduled.

50.     The Second Amendment's broad "notwithstanding anything to the contrary contained in the Purchase Agreement" language entitled Posadas to receive the Earnest Money "in

13

KE 68920059.15

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
INDEX NO. E2020003156
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 17 of 34

the event that the Closing does not occur on [March 17, 2020]" even if the reason for not closing was outside the parties' control. Indeed, the Agreement does not include a *force majeure* provision, and the parties never added one (or even discussed adding one) by virtue of any amendment.[2]

51.     Nonetheless, and despite Buyer still not having obtained debt or equity financing on terms Buyer considered acceptable, Posadas and Buyer agreed to reaffirm the Agreement and reschedule the Closing. Posadas and Buyer entered into a third amendment to the Agreement on March 17, 2020 (the "Third Amendment").

52.     Thereunder, the parties expressly acknowledged that, "[i]n light of the current conditions as a result of the Covid-19 pandemic and actions taken by relevant government authorities as a result therefrom," they would extend the Closing Date. (Third Amendment, Background ¶ B.)

53.     The Third Amendment rescheduled the Closing Date for the later of April 17 or five business days after real estate closings were again possible in Puerto Rico, whichever occurred first, but also set an outside date of July 31, 2020. Pursuant to Section 1 of the Third Amendment:

> Upon the execution of this [Third Amendment], the New Scheduled Closing Date for the Closing shall be the later to occur of (x) April 17, 2020 and (y) date that is five (5) Business Days following the applicable Governmental Authority permitting the operations of the Registry of Property, law firm offices and notary public in San Juan, Puerto Rico in accordance with the Purchase Agreement [as amended by the First and Second Amendments], provided that in no event shall the New Scheduled Closing Date be later than July 31, 2020.

54.     Section 1 of the Third Amendment does not obligate Posadas to provide Buyer with any formal notice or take any affirmative steps to schedule the Closing Date once the applicable Governmental Authority permits the operations of the Registry of Property, law firm offices and

---

[2]     Indeed, given the dates of the Amendments, the COVID-19 pandemic likely would not have qualified as *force majeure* under common *force majeure* clauses anyhow, since it was known or at least foreseeable at the time the parties entered into the Amendments and ratified the Agreement.

KE 68920059.15

notaries public in San Juan, Puerto Rico. Rather, the Third Amendment automatically fixes the

Closing Date for five Business Days after these conditions are present.

55.     The Third Amendment did not otherwise alter or modify the Agreement, as

previously amended by the First and Second Amendments, in any way. In recognition of this fact,

the parties agreed:

> Except as expressly amended, modified or superseded by this [Third] Amendment,
> the terms of the Purchase Agreement [as amended by the First and Second
> Amendments] shall remain in full force and effect and are hereby ratified by the
> Seller and the Buyer. Except as modified and amended by this Amendment, the
> Purchase Agreement and the respective obligations of Buyer and [Posadas]
> thereunder shall remain unmodified and in full force and effect.

(Third Amendment § 4.)

56.     Accordingly, all of the original terms and conditions of the original Agreement,

except as expressly modified by the First, Second, and Third Amendments, remained in full force

and effect—including, but not limited to, the "time is of the essence" condition in Sections 2.3(a)

and 14.21 of the Agreement.

### F.  Defendants Materially Breach the Terms of the Agreement by Refusing to Complete the Closing by the Closing Date.

57.     On May 1, 2020, the Governor of Puerto Rico issued Executive Order 2020-38.

Pursuant to Executive Order 2020-38, the applicable Government Authority permitted law offices

and notaries public in San Juan, Puerto Rico, to resume operations on May 4, 2020, provided that

they took certain health precautions. In turn, the Registry of Property had remained in operation

through electronic means, and continued to be operational on and after May 4, 2020. As a result,

all conditions precedent to setting a Closing Date were met.

58.     On May 4, 2020, despite being under no obligation to provide notice, Posadas

notified Buyer that the Closing would now occur on May 11, 2020—five Business Days after the

Registry of Property, law offices and notary public in San Juan, Puerto Rico, were permitted to

15

KE 68920059.15

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. E2020003156
RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 19 of 34

operate—in accordance with Section 1 of the Third Amendment. Because the conditions of Section 1 of the Third Amendment had been satisfied, the parties or their duly empowered representatives were therefore obligated to close at 1:00 p.m. (New York time) that day.[3]

59.    On May 6, 2020, by and through its legal counsel, Buyer delivered a letter purporting to reject Posadas' notice. Therein, Buyer advanced a series of baseless arguments seeking to avoid its contractual obligations.

60.    First, Buyer reasoned that the Closing Date should have been calculated from the date on which the Governor of Puerto Rico issued Executive Order 2020-38, rather than the date that it went into effect, and Closing should occur on May 8, 2020 instead of May 11, 2020 under Section 1 of the Third Amendment. Instead of offering to complete the Closing on May 8, 2020, Buyer argued that—since Posadas' notice had a different date—the notice (which, again, was never required) was a "nullity" and "tantamount to [Posadas] unilaterally renegotiating the terms of the Purchase Agreement."

61.    Second, Buyer oddly asserted that Posadas "did not declare time is of the essence in the Notice." This of course was never necessary. The Agreement itself made clear: "**TIME SHALL BE OF THE ESSENCE WITH RESPECT TO BUYER'S AND SELLER'S OBLIGATIONS UNDER THIS AGREEMENT** (subject to such adjournments of the Closing Date as are expressly permitted by this Agreement . . . .)." PSA § 2.3(a) (emphasis in original). Section 14.21 further reiterated that "time is of the essence." Although the First, Second, and Third Amendments expressly revised the Closing Date, the "time is of the essence" clauses continued at

---

[3]    Puerto Rico observes Atlantic Standard Time year round. Atlantic Standard Time is identical to Eastern Daylight Time, and thus during the period that New York observes Daylight Savings Time, the time in Puerto Rico is the same as New York.

16

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM

NYSCEF DOC. NO. 1

INDEX NO. E2020003156

RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1

Pg 20 of 34

all times to remain in full force and effect. (First Amendment § 6; Second Amendment § 6; Third Amendment § 4.)

62.     Third, Buyer argued that it was "unreasonable" in light of the COVID-19 global pandemic for its representatives to complete the Closing, because their representatives would have to "travel to San Juan, Puerto Rico in violation of shelter-in-place orders, governmental restrictions on non-essential business and social distancing guidelines . . . ."

63.     This argument was pretextual. The parties knew of the COVID-19 pandemic and were fully aware that governmental restrictions were either imminent or already in place when they entered into the Third Amendment, which expressly notes that it was executed "[i]n light of the current conditions as a result of the Covid-19 pandemic and actions taken by relevant government authorities as a result therefrom . . . ." (Third Amendment, Background ¶ B.)

64.     Moreover, the U.S. Department of Health and Human Services declared a public health emergency in the United States on January 31, 2020. In turn, Governor Vazquez issued Executive Order 2020-23 on March 12, 2020—five days *before* the Third Amendment was executed—ordering Puerto Ricans to observe, among other things, a curfew, social distancing guidelines, and to remain in their homes, unless leaving for specific purposes in response to COVID-19.

65.     In any event, there was no obstacle to completing the transaction by executing the Conveyance Documents in the presence of the Puerto Rico Notary as required under the Agreement. The Agreement did not require anyone to travel to Puerto Rico; it simply required a person authorized to act for Buyer to appear before the notary. In fact, since Buyer's Puerto Rico attorney had previously executed certain other documents on Buyer's or Buyer's affiliates' behalf

17

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. E2020003156

RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 21 of 34

that required such authorization,[4] Posadas is informed and believes that Buyer had already executed or readily could have arranged for the execution of the requisite resolutions to give its Puerto Rico attorney authority to execute the Conveyance Documents on Buyer's behalf.

66. The Governor of Puerto Rico's Executive Order 2020-38 permitted law offices and notaries to resume operations, this transaction could have been consummated under the provisions of that Executive Order, and local counsel on behalf of Posadas filed a health and security protocol and self-certification slip with the Department of Labor in Puerto Rico as necessary to complete an in-person Closing in its offices.

67. As reflected by Section 2 of the First Amendment, the Conveyance Documents had been previously reviewed and approved by Buyer, thus all that remained to be done was to sign and update the papers to properly reference the names of the authorized signatories. Buyer could have easily appointed an authorized representative or attorney-in-fact within Puerto Rico to handle this aspect of the Closing. Indeed, Posadas duly authorized and caused its local counsel to appear on its behalf on May 11, 2020 to execute the Conveyance Documents. Further, Buyer had local counsel within Puerto Rico, whom they had apparently authorized on previous occasions to execute other Closing documents on behalf of Buyer or Buyer's affiliates in anticipation of prior Closing Dates (which were then extended by the parties).[5] In addition, it is commonplace for parties to transactions for Puerto Rico real estate to execute such Conveyance Documents in this manner.

---

[4] Specifically, in March, Buyer's counsel had indicated to Seller's counsel that Buyer intended to further assign the Agreement to two new affiliated Delaware entities with the same names as CP Ocean and CP Lagoon, and Buyers local Puerto Rico counsel executed certain Closing documents under the Agreement on behalf of those entities and delivered those documents to Seller's counsel.

[5] Nor did Buyer inquire as to the adequacy of the safety precautions Posadas' counsel had adopted and certified to the Puerto Rican authorities.

KE 68920059.15

68.     Finally, Buyer argued that the Agreement "requires [Posadas] to deliver, among other things, a going concern hotel," and thus the Closing could not occur on May 11, 2020. In support, Buyer cited zero provisions in the Agreement, and the reason for this conspicuous omission is simple: Posadas is not, was not, and never has been obligated to deliver a "going concern hotel." To the contrary, the Agreement expressly and unequivocally disclaims any such obligation (indeed, at the time the Agreement was signed, the Hotel was already considered a "distressed" asset).

69.     The Agreement expressly states that, "[n]otwithstanding anything to the contrary contained [t]herein, [Posadas] shall not be required . . . to maintain operations at the hotel." (PSA § 3.4(a)(i)(D).[6]) Moreover, pursuant to Section 7.4(a) of the Agreement, Buyer expressly acknowledged and agreed in relevant part:

**BUYER HAS NOT BEEN INDUCED BY AND HAS NOT RELIED UPON ANY WRITTEN OR ORAL REPRESENTATIONS, WARRANTIES OR STATEMENTS, WHETHER EXPRESS OR IMPLIED, MADE BY [POSADAS], OR ANY PARTNER OR MEMBER OF [POSADAS], OR ANY AFFILIATE, AGENT, EMPLOYEE, OR OTHER REPRESENTATIVE OF ANY OF THE FOREGOING OR BY ANY BROKER OR ANY OTHER PERSON REPRESENTING OR PURPORTING TO REPRESENT SELLER WITH RESPECT TO THE ASSETS, THE CONDITION OF THE ASSETS OR ANY OTHER MATTER AFFECTING OR RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY, OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.**

70.     As such, Buyer acknowledged and agreed that it did not rely upon any representations regarding the "Condition of the Assets," which the Agreement defines to include

**"THE ECONOMIC FEASIBILITY, CASH FLOW AND EXPENSES OF THE ASSETS,**

---

[6]     This proviso was in a section that required Posadas to use "commercially reasonable efforts to cause Property Manager to operate and maintain the Property substantially consistent with the operation and maintenance of the Property over the previous three (3) month period." (PSA § 3.4(a)(i).) Thus, even aside from the proviso, Posadas' obligation was only ever to use commercially reasonable efforts.

19

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
INDEX NO. E2020003156
NYSCEF DOC. NO. 1
20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 23 of 34
RECEIVED NYSCEF: 05/18/2020

AND HABITABILITY, MERCHANTABILITY, FITNESS, SUITABILITY AND ADEQUACY OF THE PROPERTY FOR ANY PARTICULAR USE OR PURPOSE . . . ." (PSA § 7.4(b)(ii).)

71.     Thus, absent an express provision of the Agreement indicating that Posadas was obligated to deliver the Hotel as a "going concern," no such obligation exists. The Agreement contains no such express provision.

72.     In any event, Buyer's waiver of all conditions precedent to Closing in the Second Amendment meant that, even if such an obligation had ever existed, Buyer could not invoke it in order to refuse to close: material performance or compliance with covenants was originally a "[c]ondition [p]recedent to Buyer's [o]bligations" under Section 5.2(b), but by Section 2 of the Second Amendment  "Buyer has waived all conditions precedent to Closing." As such, even if Posadas had been obligated to maintain the Hotel as a "going concern" as a condition precedent to closing (which it was not), Buyer waived any such condition and Buyer's remedies did not include refusing to close.

73.     In an attempt to clarify the situation, Posadas' counsel sent a letter to Buyer, on May 7, 2020, identifying several of the more glaring flaws in its reasoning, and explaining that Posadas expected Buyer to comply with its Closing obligations, by May 11, 2020, as required.

**G. Defendants Refuse to Pay Plaintiff the Earnest Money and Instead File Suit in Puerto Rico Seeking to Bar Plaintiff from Remarketing the Hotel.**

74.     On May 8, 2020—just two days after Buyer asserted that COVID-19 rendered it untenable to complete legal and administrative tasks in Puerto Rico—Buyer nevertheless filed a complaint and an *ex parte* motion for a *lis pendens* and preliminary injunction against closing and against Posadas transferring the property to anyone else (the "Puerto Rico Action") in the Tribunal of First Instance in San Juan, Puerto Rico (the "Tribunal" or "Puerto Rico court").

20

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. E2020003156

RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 24 of 34

75. The filing of the Puerto Rico Action was in plain violation of the exclusive jurisdiction provision of the Agreement, which provided for disputes to be addressed only in New York courts (PSA § 14.14), and the complaint contained numerous material misrepresentations and omissions regarding the Agreement and its Amendments.

76. The complaint in the Puerto Rico Action (the "PR Compl.") falsely represented to the Tribunal that Posadas and Hilton had shared economic projections with Buyer that amounted to a representation inducing it into believing that, not only was it acquiring an operational Hotel, but also a business that would be financially profitable as of the Closing Date. (PR Compl. ¶¶ 20–21.) Of course, as set forth above, the Agreement stated precisely the opposite and expressly disclaimed any such representation.

77. To deceive the Tribunal into granting *ex parte* relief, Buyer omitted or misrepresented the key facts around the negotiations and full terms of the Agreement. For example, Buyer failed to attach copies of the First Amendment, Second Amendment, or Third Amendment to its complaint. This allowed Buyer to further mislead the Tribunal by representing that the Initial Closing Date was first extended because, "among other things," Posadas purportedly could not meet its pre-Closing obligations. (PR Compl. ¶ 22.) That is patently false, given that it was Buyer—not Posadas—that requested the extension (with Buyer depositing an Extension Deposit of an additional $1 million in order to secure that extension).

78. Likewise, when it came to explaining the second extension, Buyer conveniently mentioned only that CP Acquisition had assigned its rights under the Purchase Agreement to its subsidiaries CP Lagoon and CP Ocean, giving the false impression that this was the cause of the delay. (PR Compl. ¶¶ 24–25.) In fact, those assignments had occurred on February 28, 2020, the same day that the *First* Amendment was signed.

KE 68920059.15

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. E2020003156
RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 25 of 34

79.     Buyer, moreover, neglected to mention that the Parties agreed that New York law would govern their transaction, aside from the technicalities of conveyancing in Puerto Rico and certain local tax provisions. The first three causes of action in its complaint sought relief under *Puerto Rico* contract law, including seeking to have the Puerto Rico court rewrite the price term of the Agreement under the Puerto Rico law doctrine of *rebus sic stantibus* to reduce the price to one that would be "fair."

80.     On the same day that Buyer commenced the Puerto Rico Action, Buyer delivered a letter to the Escrow Agent instructing it to withhold the Earnest Money and insisting that the Escrow Agent was not empowered to disburse the Earnest Money to Posadas. Notably, the letter did not reference the existence of the Puerto Rico Action in any way.

81.     On May 9, 2020, unaware that Buyer had initiated the Puerto Rico Action,[7] Posadas sent a letter to Buyer and the Escrow Agent informing them that, despite Buyer's anticipatory repudiation of the Agreement, Posadas remained "ready, willing and able" to complete the Closing on May 11, 2020. This letter also reminded the Buyer and the Escrow Agent that, pursuant to Section 2 of the Second Amendment, "Escrow Agent shall immediately release the Earnest Money to [Posadas] and . . . Buyer shall not have any right to object to the release of the Earnest Money to [Posadas]," if the Closing did not occur on the Closing Date.

82.     Despite having been granted three separate additional extensions of the Closing Dates, and with full knowledge of the fact that it lacked any excuse for not performing under the Agreement, Buyer failed to complete the Closing on the Closing Date as required by Section 1 of the Third Amendment.

---

[7]     Defendants claim to have served Posadas' Resident Agent in Puerto Rico at some point on Friday, May 8, 2020, but Posadas did not receive a copy of the complaint from its Resident Agent until May 11, 2020.

22

KE 68920059.15

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 26 of 34

83.    On May 11, 2020, after Buyer failed to complete the Closing, Posadas delivered a written notice addressed to Buyer and Escrow Agent notifying them that Buyer was in material breach of the Agreement, and pursuant to Sections 12.2(a)(ii) and 14.5(b) of the Agreement, Posadas was terminating and demanding payment of the $5,100,000 in Earnest Money held by the Escrow Agent as liquidated damages.

84.    Also on May 11, 2020, Buyer delivered a letter to Posadas and Escrow Agent purporting to "reject" the notice of termination, and enclosing the *lis pendens* that Buyer had secured *ex parte* in the Puerto Rico Action earlier that morning to cloud the Property's title and preclude Posadas from finding a new buyer that would actually honor its contractual commitments.[8]

85.    Buyer has since refused Posadas' request that they dismiss the Puerto Rico Action and remove the *lis pendens* in light of, among other things, the Agreement's exclusive jurisdiction provision requiring disputes to be adjudicated only in New York courts.

## FIRST CAUSE OF ACTION

**Breach of Contract**
**Buyer's Default and Failure to Pay Earnest Money**
**(PSA § 12.1(d) and Second Amendment § 2)**

86.    Plaintiff incorporates by reference and re-alleges each allegation set forth above as if fully set forth herein.

87.    Pursuant to Section 2.3 of the Agreement, as amended by Section 1 of the Third Amendment, Defendants were obligated to complete the Closing by no later than 1:00 p.m. (New York time) on May 11, 2020. Further, the parties acknowledged and agreed that "**TIME SHALL BE OF THE ESSENCE WITH RESPECT TO BUYER'S AND [POSADAS']**

---

[8]    The *lis pendens* required Buyer to post a bond, which to Posadas' knowledge it has not yet done.

KE 68920059.15

**OBLIGATIONS UNDER THIS AGREEMENT** (subject to such adjournments of the Closing Date as are expressly permitted by this Agreement, including without limitation, Section 8.3(a))." (PSA § 2.3(a).)

88.     Prior to the Closing, Posadas was entitled to terminate the Agreement if there was a "material breach or default by Buyer in the performance of any of its obligations under th[e] Agreement," and no notice or opportunity to cure such material breach or default was required if Buyer failed to "pay the Purchase Price, deliver the documents as required pursuant to Section 6.1 or acquire the Assets on the Closing Date." (PSA § 12.1(a)(ii).)

89.     Buyer materially breached or defaulted under Section 12.1(a)(ii) of the Agreement when they failed to pay the Purchase Price, deliver the documents as required pursuant to Section 6.1, and/or acquire the Assets on the Closing Date in accordance with the terms of the Agreement. The Closing Date was not adjourned in any manner expressly permitted by the Agreement.

90.     Buyer's failure to perform under the Agreement was not otherwise excused. To the contrary, Buyer had agreed in the Second Amendment that "notwithstanding anything to the contrary contained in the Purchase Agreement … in the event that the Closing does not occur on the New Scheduled Closing Date, (x) Escrow Agent shall immediately release the Earnest Money to Seller and (y) Buyer shall not have any right to object to the release of the Earnest Money to Seller." (Second Amendment § 2.) As amended by the Third Amendment, the New Scheduled Closing Date was May 11, 2020, and the Closing did not occur on that date.

91.     Posadas had performed all requisite conditions precedent to Closing under the Agreement, as amended, in all material respects, and in any event, Defendants expressly waived any such conditions pursuant to Section 2 of the Second Amendment.

KE 68920059.15

92.     Accordingly, Posadas exercised its right to terminate under Section 12.1(a)(ii) of the Agreement on May 11, 2020, and notified Buyer of the termination that same day.

93.     Section 12.1(d) of the Agreement provided in relevant part:

Buyer and [Posadas] hereby acknowledge and agree that it would be impractical and/or extremely difficult to fix or establish the actual damage sustained by [Posadas] as a result of such default by Buyer, and agree[d] that the Earnest Money is a reasonable approximation thereof. Accordingly, in the event that Buyer breaches this Agreement by materially defaulting in the performance of any of its obligations under this Agreement, the Earnest Money shall constitute and be deemed to be the agreed and liquidated damages of [Posadas], and shall be paid by the Escrow Agent to [Posadas] as [Posadas'] sole and exclusive remedy hereunder; provided, however, that the foregoing shall not limit Buyer's obligation to pay to [Posadas] all attorney's fees and costs of [Posadas] to enforce the provisions of this Section 12.1.

94.     As such, upon being notified of Posadas' termination pursuant to Section 12.1(a)(ii) of the Agreement, the Escrow Agent was obligated to "immediately disburse the Earnest Money" to Posadas. (PSA § 12.1(d).)

95.     In addition, pursuant to Section 2 of the Second Amendment, Buyer agreed that "(i) Buyer has waived all conditions precedent to Closing, and (ii) notwithstanding anything to the contrary contained in the Purchase Agreement (including without limitation, Section 14.5(b)), in the event that Closing does not occur on the [Closing Date], (x) Escrow Agent shall immediately release the Earnest Money to [Posadas] and (y) Buyer shall not have any right to object to the release of the Earnest Money to Seller."

96.     In accordance with the foregoing terms and conditions, Posadas was entitled to receive the $5,100,000 in Earnest Money immediately upon its termination of the Agreement pursuant to Section 12.1(a)(ii) of the Agreement, and Buyer had no right to object or obstruct Posadas' receipt of the Earnest Money.

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. E2020003156

RECEIVED NYSCEF: 05/18/2020

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 29 of 34

97.      On May 11, 2011, Buyer materially breached Section 2 of the Second Amendment when it delivered a letter to the Escrow Agent objecting to the release of the Earnest Money to Posadas, which caused the Escrow Agent to decline to release the Earnest Money.

98.      As a direct result of Buyer's material breaches of and default under the Agreement, as amended, Posadas has incurred monetary damages of $5,100,000, plus prejudgment interest and costs. Pursuant to Section 12.1(d) of the Agreement, Posadas is entitled to recover such monetary damages and interest, as well as all attorneys' fees and costs incurred to enforce Section 12.1 of the Agreement.

### SECOND CAUSE OF ACTION

### Declaratory Judgement (CPLR 3001)

99.      Plaintiff incorporates by reference and re-alleges each allegation set forth above as if fully set forth herein.

100.      There is a ripe and justiciable dispute between the parties as to the scope of Buyer's obligations under the Agreement, as amended, and its material breaches thereof or default thereunder.

101.      As such, Posadas seeks a judgment declaring that:

(a)      Buyer materially breached or defaulted under the terms of the Agreement by failing to complete the Closing by the Closing Date of May 11, 2020 pursuant to Section 2.3 of the Agreement, as amended;

(b)      Posadas was entitled to terminate the Agreement pursuant to Section 12.1(a)(ii) of the Agreement, and properly terminated the Agreement thereunder after Buyer failed to close on May 11, 2020;

KE 68920059.15

FILED: MONROE COUNTY CLERK 05/18/2020 01:31 PM
NYSCEF DOC. NO. 1

20-12094-mew    Doc 12-1    Filed 09/11/20    Entered 09/11/20 15:52:21    Exhibit 1
Pg 30 of 34

INDEX NO. E2020003156

RECEIVED NYSCEF: 05/18/2020

(c)      Posadas was entitled to the immediate disbursement of the $5,100,000 in Earnest Money deposited by Buyer with the Escrow Agent pursuant to Section 12.1(d) of the Agreement;

(d)      Buyer materially breached Section 2 of the Second Amendment when it objected to the Escrow Agent immediately disbursing the Earnest Money to Posadas on May 11, 2020;

(e)      This action was brought to enforce the provisions of Section 12.1 of the Agreement, and Buyer is therefore obligated to pay Posadas' attorneys' fees and costs pursuant to Section 12.1(d) of the Agreement;

(f)      Buyer has no legal or equitable interests in, or rights to, the assets identified in or related to the Agreement, including, but not limited to, all parcels of land or real property described in the Agreement, as amended, and all Schedules thereto, and all *lis pendens* or other notices or claims filed by Buyer are null and void and of no legal force or effect; and

(g)      New York has exclusive jurisdiction over all actions arising from, or related to, the Agreement pursuant to Section 14.14 of the Agreement.

### THIRD CAUSE OF ACTION

**Breach of Contract**
**Violation of Exclusive Jurisdiction Provision (PSA § 14.14)**

102.      Plaintiff incorporates by reference and realleges each allegation set forth above as if fully set forth herein.

103.      Pursuant to Section 14.14 of the Agreement:

Buyer and [Posadas] each irrevocably submits to ***the exclusive jurisdiction of (a) the Supreme Court of the State of New York*** and (b) the United States District Court for the Southern District of New York for purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby…. Buyer and [Posadas] each irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of the

27

Agreement or the transactions contemplated hereby in (x) the Supreme Court of the State of New York and (y) the United States District Court for the Southern District of New York, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

(Emphasis added.)

104.    In direct breach of Section 14.14 of the Agreement, Defendants commenced litigation in the Tribunal de Primera Instancia, Centro Judicial de San Juan, Sala Superior, in San Juan, Puerto Rico.

105.    As a direct result of Defendants' breach of Section 14.14, Posadas was forced to retain legal counsel to defend against Defendants' wrongfully brought action and incurred attorneys' fees and costs in connection therewith. Further, Defendants have incurred additional costs and expenses as a direct result of the wrongful restraint imposed by the *lis pendens* obtained from the Tribunal de Primera in breach of Section 14.14 of the Agreement. Under Puerto Rico law, a *lis pendens* could not have issued had Defendants complied with Section 14.14.

106.    In the alternative, Defendants' conduct in connection with the Puerto Rico Action, including making false or misleading representations to the Puerto Rico court to secure *ex parte* relief (including, but not limited to, omitting to disclose to the Court contrary terms of the Agreement and relying upon conditions expressly waived by the Second Amendment without disclosing that fact) has breached the implied covenant of good faith and fair dealing.

107.    Posadas has therefore been harmed as a direct and proximate result of Defendants' conduct, including its attorneys' fees and costs incurred in defending against the litigation pending in Puerto Rico and damages arising from any wrongful restraint imposed in the litigation in Puerto Rico and the inability of Posadas to market and sell the property while this dispute continues.

KE 68920059.15

INDEX NO. E2020003156
RECEIVED NYSCEF: 05/18/2020

108.    These damages are separate and apart from the harms contemplated by Section 12.1(d) of the Agreement, the Earnest Money is inadequate to compensate Posadas for such harms, and the Earnest Money cannot be treated as liquidated damages thereunder in connection with this cause of action.

**WHEREFORE**, Plaintiff demands the following relief in its favor and in favor of the Class, and against Defendants, as follows:

A.    Awarding Plaintiff damages in the amount of $5,100,000 and/or such other amount as may be established;

B.    Awarding Posadas damages in such amount as may be established in connection with its defense of the action pending in Puerto Rico and and damages arising from any wrongful restraint imposed in the litigation in Puerto Rico and the inability of Posadas to market and sell the property while this dispute continues;

C.    Awarding Plaintiff prejudgment interest on all damages as provided by contract or law;

D.    Awarding Posadas its attorneys' fees and costs incurred in connection with enforcing Section 12.1 of the Agreement in accordance with Section 12.1(d) of the Agreement;

E.    Awarding Posadas its reasonable costs and fees, including attorneys' fees, in connection with enforcing Section 14.14 of the Agreement;

F.    A declaratory judgment declaring that:

   a.    Defendants materially breached or defaulted under Section 2.3(a) of the Agreement, as amended;

   b.    Posadas properly terminated the Agreement pursuant to Section 12.1(a)(ii) of the Agreement;

   c.    Defendants materially breached Section 12.1 of the Agreement and Section 2 of the Second Amendment;

   d.    Defendants breached Section 14.4 of the Agreement by commencing litigation in Puerto Rico;

   e.    Defendants hold no legal or equitable interests in, or rights to, any of the assets or property identified in or related to the Agreement, whether real or personal, tangible or intangible, and all *lis pendens* or other

29

notices or claims to the contrary are null and void and of no legal force
or effect; and

G.  Such further and other relief as this Court may deem just and proper.

30

Dated: May 18, 2020

KIRKLAND & ELLIS LLP

/s/ Aaron Marks
Aaron Marks, P.C.
Joseph M. Sanderson
Jace A. Cearley
Giselle Sedano
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: aaron.marks@kirkland.com
        joseph.sanderson@kirkland.com
        jace.cearley@kirkland.com
        giselle.sedano@kirkland.com

*Counsel for Plaintiff Posadas de Puerto Rico Associates, L.L.C.*

31

KE 68920059.15