HEARING DATE: SEPTEMBER 16, 2020
HEARING TIME: 11:30 A.M.

**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Anthony Dougherty, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CONDADO PLAZA ACQUISITION LLC, et al., | : | Case No.: 20-12094 (MEW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------- x

**DEBTORS' OPPOSITION TO POSADAS DE PUERTO RICO ASSOCIATES L.L.C.'S MOTION TO DISMISS CHAPTER 11 CASES OR IN THE ALTERNATIVE GRANTING RELIEF FROM THE AUTOMATIC STAY**

TO:  THE HONORABLE MICHAEL E. WILES
     UNITED STATES BANKRUPTCY JUDGE

Condado Plaza Acquisition LLC ("CPA"), Condado Plaza Acquisition Ocean LLC ("Ocean") and Condado Plaza Acquisition Lagoon LLC ("Lagoon"),[1] the above-captioned debtors and debtors-in-possession (individually a "Debtor" and together, the "Debtors"), by their proposed counsel, Tarter Krinsky & Drogin LLP, together with the accompanying declaration of Roys Poyiadjis dated September 15, 2020 (the "Poyiadjis Decl."), as and for their opposition to Posadas De Puerto Rico Associates L.L.C.'s motion (the "Motion") to dismiss these chapter

---

[1] The last four digits of CPA's employer identification number are 2094, the last four digits of Ocean's employer identification number are 2095 and the last four digits of Lagoon's employer identification number are 2096. Each of the Debtors maintains a mailing address at 1325 Avenue of the Americas, 28th Floor, New York, New York 10019.

1

{Client/001768/56/02182903.DOC;2 }

11 cases, or, in the alternative granting relief from the automatic stay, respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. The Motion should be denied in its entirety. The Debtors commenced these chapter 11 cases in good faith to reorganize their financial affairs by preserving their rights as contract vendee in a valuable executory contract, an agreement of purchase and sale dated November 20, 2019 (the "PSA") for the purchase of the hotel commonly known as the Condado Plaza Hilton and related assets (the "Hotel") owned by Posadas De Puerto Rico Associates L.L.C. ("Posadas").

2. The Debtors filed these chapter 11 cases because Posadas has attempted to terminate the PSA based upon the Debtors' alleged failure to close by the closing date set forth in the PSA as amended. Posadas commenced an action in the Supreme Court of the State of New York, County of Monroe on May 18, 2020 captioned, <u>Posadas de Puerto Rico Associates, L.L.C. v. Condado Plaza Acquisition, LLC et al.,</u> Index No.: E2020003156, seeking a declaratory judgment that Posadas properly terminated the PSA and for a judgment directing the title company to deliver the $5.1 million contract deposit under the PSA to Posadas (the "State Court Action").

3. Posadas and Condado entered into the transaction with the basic expectation and understanding that in exchange for $31 million, Condado would be receiving a viable and operational Hotel. <u>See</u>, Poyiadjis Decl. at ¶¶ 7-9. Consistent with this purpose, Posadas agreed to convey to Condado all assets related to the Hotel's operations, including all books and records, guest files, guest lists, telephone exchange numbers and rights to future bookings; (ii) all moveable personalty for the operation of the Hotel, such as, beds, desks, chairs, sofas, beds, computers, laptops, food, beverages and engineering, office, maintenance and housekeeping

2

supplies, etc.; (iii) the Hotel's intellectual property and any and all goodwill associated therewith, including the name "El Condado Plaza," and trademarks, copyrights, logos and designs; (iv) any and all transferrable licenses and permits issued by governmental authorities for conducting business as a Hotel; (v) rights with respect to certain lease agreements; (vi) the Hotel's rights and obligations under the collective bargaining agreement(s) with union employees; and (vii) the real property upon which the Hotel is situated (collectively, the "Assets").

4.    The bargained for Assets formed the legal consideration which, in exchange at closing, Condado would pay $31 million to Posadas.

5.    At bottom, Condado rejected Posadas' notice to close the transaction because Posadas could not convey the benefit of the bargain provided by the PSA.

6.    Importantly, in the State Court Action, the Honorable J. Scott Odorisi, J.S.C. granted a temporary restraining order (the "TRO") on August 14, 2020, preventing Posadas from selling the Hotel to any third party and scheduled a further hearing on the Debtors' request for a preliminary injunction. As this Court is well aware, in order to obtain a TRO, the Court must find, among other legal elements, a likelihood of success on the merits.

7.    Judge Odorisi determined the Debtors were likely to succeed on the merits that they were not in default under the PSA due to the related doctrines of failure of consideration and/or frustration of purpose. As further detailed below, these two doctrines excused the Debtors form performing under the PSA.

8.    Here, the Debtors and Posadas entered into the PSA for the purchase and sale of the Hotel a few months prior to the worldwide outbreak of the Covid-19 pandemic. The Covid-19 pandemic totally eviscerated the hotel and hospitality business worldwide and especially in tourist destinations such as Puerto Rico. In fact, the occupancy rate at the Hotel went from approximately 33% in 2019 to less than 7% after the outbreak of the pandemic. Currently, the Hotel has fired the Hotel staff and is either closed or virtually closed with no apparent plans to

re-open. Consequently, Posadas cannot convey a Hotel with staff, bookings, future bookings or goodwill which are critically part and parcel of the bargained for consideration.

9. Although Posadas points to certain provisions of the PSA which essentially state the Debtors were purchasing the Hotel and related assets "as is" and with no representations, other provisions of the PSA require Posadas to use commercially reasonable efforts to operate the Hotel as it had been operated during the three (3) months prior to the PSA. Additionally, the PSA provides that goodwill is a component of the Hotel and one of the assets that Posadas had agreed to convey to Condado as part of the bargained for consideration. This is precisely why Judge Odorisi granted the Debtors a TRO as Posadas was simply unable (through no fault of its own) to deliver what it agreed to deliver under the PSA due to the worst pandemic in the last 100 years which devastated the hotel and tourism industries.

10. By order dated August 28, 2020, Judge Odorisi modified his initial TRO and directed the Debtors to post a $9.2 million undertaking based solely upon conclusory and highly misleading affidavit which Posadas submitted.

11. As detailed below, case law in this district has permitted entities and individuals to maintain chapter 11 cases in the face of an adverse court ruling which the debtor has been unable to bond. Here, the Debtors candidly acknowledge the primary reason for the chapter 11 filings was the Debtors' inability to post a $9.2 million undertaking on short notice. Additionally, the Debtors have already removed the State Court Action to this Court and the Debtors are requesting the Court to refer the removed State Court Action to mediation. As this Court is aware, it has the power to order mediation of a dispute even if both parties do not consent.

12. Posadas' assertions the Debtors filed these cases in bad faith are premised on nothing more than generalized allegations of the well-known factors set forth by the Second Circuit and other courts. As set forth below, while a few of the factors are present here, most are not and recent case law from this district has declined to dismiss chapter 11 filings by a contract

{Client/001768/56/02182903.DOC;2 }    4

vendee under a contract to purchase real estate where the debtor seeks to avail itself of the benefits of § 108(b) of the Bankruptcy Code.

13.   Here, since the State Court has found a likelihood of success on the merits (on the Debtors' counterclaims) by granting the TRO and the Debtors have removed the State Court Action to this Court, the Debtors intend to avail themselves of the 60-day extension of time provided for under section 108(b) of the Bankruptcy Code, or alternatively, to obtain recission of the PSA as permitted by the related doctrines of failure of consideration and frustration of purpose. See, Poyiadjis Decl. at ¶ 12.

## ARGUMENT

### I. THE MOTION SHOULD BE DENIED BECAUSE THESE CASES WERE FILED IN GOOD FAITH

14.   Posadas seeks dismissal pursuant to section 1112(b) of the Bankruptcy Code based on Debtors' alleged bad faith. Allegations of "bad faith" are routinely made in cases where the debtor is a holding company formed prior to the petition date for the sole purpose of acquiring or developing real property. See, In re AAGS Holdings LLC 608 B.R. 373 (Bankr. S.D.N.Y. November 12, 2019). Courts in this district have almost uniformly recognized "the concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." In re 234-6 West 22nd St Corp., 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). See also In re G.S. Distribution, Inc., 331 B.R. 552, 566 (Bankr. S.D.N.Y. 2005) ("courts should dismiss on bad faith grounds sparingly, 'with great caution.'"). Posadas' Motion filed only two days into the Debtors' cases is devoid of any proof of intentional bad faith.

15.   Of course, this Court has the power to dismiss a chapter 11 case based on a filing made in bad faith. Here, Posadas relies primarily on the well-known C-TC 9th Avenue Partnership case, 113 F.3d 1304 (2d Cir. 1997). In C-TC, a partnership which was in dissolution,

filed a petition thereby staying an almost completed foreclosure action. The court held the debtor filed solely to frustrate the legitimate efforts of its secured creditors who were foreclosing on the debtor's sole asset.

16. The Second Circuit established eight (8) criteria often present in single asset real estate cases subject to a foreclosure action which tend to indicate a bad faith filing. Posadas references these factors in the Motion. However, the inference of "bad faith" is not established through the rote recitation of the C-TC factors. See, In re Sletteland 260 B.R. 657 (Bankr. S.D.N.Y. 2001); G.S. Distribution, 331 B.R. at 566 (denying jewelry manufacturer/supplier's motion to dismiss chapter 11 case on bad faith grounds where debtor filed its case not for an improper purpose, but rather, "in an effort to save its business and protect any rights its general creditors might have had in the jewelry pursuant to the 'strong arm powers' of § 544 of the Bankruptcy Code."). Courts applying the C-TC criteria engage in a detailed factual analysis to determine if the debtor's filing constitutes an abuse of the judicial process.

17. Judge Bernstein's recent decision in AAGS Holdings LLC, 608 B.R. 373, is instructive and analogous to the present cases. In AAGS, the debtor, a holding company formed to purchase a piece of real estate, filed on the day of the expiration of a "time is of the essence" closing date. The debtor filed its case for the sole purpose of obtaining a 60-day extension under section 108(b) of the Bankruptcy Code. Id. at 382. The seller moved to dismiss the chapter 11 filing on bad faith filing grounds. Judge Bernstein looked to the C-TC factors and observed that several of the factors were present, such as the debtor had only one asset (an interest as contract vendee), the debtor had no cash flow or employees and the debtor filed the case on the "eve" of potential termination of the sale contract.

18. However, Judge Bernstein pointed out that despite those indicia of bad faith, the Second Circuit has recognized "there is a considerable gap between delaying creditors, even secured creditors, on the eve of foreclosure and the concept of abuse of judicial purpose."

AAGS, 608 B.R. at 383 (citing In re Cohoes Indus Terminal, Inc. 931 F.2d 222, 228 (2d Cir. 1991)). In Cohoes, the Second Circuit held that a filing could be considered frivolous if there was "no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." Id. at 227. But the Second Circuit in Cohoes went on to state that a case whose admitted purpose was to attack a state court judgment and to obtain related respite from creditor demands was not filed in bad faith if the debtor had "some intention of reorganizing." 931 F.2d at 228. In AAGS, Judge Bernstein, following the principles set forth by the Second Circuit, went on to reject the argument presented by the seller that a debtor's desire to take advantage of a specific protection of the Bankruptcy Code was tantamount to bad faith. See also In re Trudy Development LLC, Case No. 05-18135-alg (Bankr. S.D.N.Y. 2005)[ECF No. 26](order, inter alia, denying motion to dismiss debtor's chapter 11 case for bad faith where debtor argued its bankruptcy filing was a legitimate exercise of its rights under section 108(b)).

19. The present facts are analogous to the facts in AAGS Holdings. The Debtors here are holding companies formed to purchase the Hotel, the Debtors have no employees and no cash flow. The Debtors' primary asset is their interest under the PSA and the $5.1 million contract deposit. Here, as in AAGS, the Debtors intend to take advantage of §108(b) of the Bankruptcy Code. The only arguable difference is the Debtors here filed on the eve of the state court judge likely vacating and/or modifying the TRO due to the Debtors' inability to post in one week a $9.2 million undertaking and the Posadas' argument the time to close under the PSA expired prior to the petition date. However, as set forth above, the state court judge granted the TRO which requires a likelihood of success on the merits.

20. The Covid-19 pandemic is an unprecedented intervening event in our lifetime. This is not debatable. Under the doctrine of failure of consideration, the Debtors can be excused from performance under a contract. "Failure of consideration exists whenever one who has

promised to give some performance fails without his or her fault to receive in some material respect the agreed quid pro quo for that performance." Failure of consideration gives the disappointed party the right to rescind the contract. See, Independent Energy Corp. v. Trigen Energy Corp. 944 F. Supp. 1184, 1199 (S.D.N.Y. 1996) quoting Fugelsang v. Fugelsang 131 A.D. 2d 810, 517 N.Y. S. 2d. 176, 177 (2d Dept. 1987).

21.     Here, section 2.1(b)(x) of the PSA specifically provides Posadas is selling the intangibles associated with the Properties, including, without limitation, goodwill …related to the Property. Goodwill has a value and based upon the unforeseen intervening event (the Covid-19 pandemic) which virtually destroyed the entire value of the Hotel, the Debtors are likely to succeed on their failure of consideration counterclaim.

22.     Similarly, New York courts recognize the doctrine of frustration of purpose. Under the doctrine of frustration of purpose, a party to a contract can be excused from performance if (1) the party's principal purpose in making the contract is frustrated, (2) without that party's fault, and (3) by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made. See, PPF Safeguard LLC v. BCR Safeguard Holding, LLC 85 A. D. 3d 506, 924 N.Y.S. 2d 391 (1st Dept. 2011).

23.     The Debtors submit all of these elements are present. The Debtors' principal purpose in entering into the PSA was to purchase the operating Hotel. See, Poyiadjis Decl. at ¶¶ 7-9. This is precisely why section 3.4(a)(i) of the PSA required Posadas to "use commercially reasonable efforts to cause the Property Manager to operate and maintain the Property substantially consistent with the operation and the maintenance of the property over the previous (3) month period." The Covid-19 pandemic was clearly not the Debtors' fault and the basic assumption under which the PSA was made was that the Hotel would continue to operate and there would not be a worldwide pandemic a few months after signing the PSA which virtually destroyed the Hotel's value.

24.     Posadas also argues the Debtors' chapter 11 filings were in bad faith as the only reason for the filings was to prevent Judge Odorisi from modifying or vacating the TRO because of the Debtors' inability to post the undertaking. In <u>In re Sletteland</u>, supra, former bankruptcy Judge Gropper carefully analyzed the issue of whether a chapter 11 filing in the face of a crushing state court judgment to avoid posting a bond constitutes bad faith. Judge Gropper pointed out that at least three (3) Supreme Court Justices in the <u>Texaco</u> case who concurred in the decision lifting the Second Circuit injunction enjoining Pennzoil from executing on its $11.2 billion dollar judgment stated, <u>Texaco</u> could file a chapter 11 and invoke the automatic stay which of course it ultimately did.

25.     Judge Gropper declined to dismiss Mr. Sletteland's chapter 11 petition which he filed primarily because he could not afford to post a $3 million bond. In declining to dismiss Mr. Sletteland's chapter 11 petition on bad faith grounds, Judge Gropper stated:

> In applying the above factors [C-TC factors] to the case at bar, the filing here bears none of the "core" indicia of "bad faith." The Debtor did not transfer assets or take any other action to hinder or delay creditors prior to the filing of the case …… The Shareholder Group does not argue that the Debtor has the means to … obtain an appeal bond … A blanket rule that would require dismissal of a Chapter 11 case filed by an individual who did not have a business with employees but sought to prosecute an appeal without filing a bond would ignore the holding of these cases that the individual facts of the matter must be scrutinized.

<u>Sletteland</u>, 260 B.R. at 666.

26.     Here, the Debtors do not have the financial ability to post a $9.2 million undertaking and if the Court dismisses these chapter 11 cases on the amorphous ground of bad faith filing, it will likely lead to a vacatur of the TRO and deprive the Debtors of the benefit of their bargain and lead to the inequitable forfeiture of the $5.1 million contract deposit plus the loss of another $1.5 million in additional monies lent to the Debtors.

27.     As set forth in the Poyiadjis Decl., the Debtors owe millions of dollars to an affiliated entity and the Debtors have $5.1 million constituting the contract deposit at stake. If

{Client/001768/56/02182903.DOC;2 }            9

anyone is acting in bad faith, its Posadas who is attempting to terminate the PSA, retain the $5.1 million deposit and sell the Hotel to a party who the Debtors have negotiated with respect to a joint venture or lending relationship.[2]

28. In short, applying the C-TC factors, this Court should deny the Motion at this early stage of these chapter 11 cases. First, factor (1) the Debtors have only one asset, factor (6) the Debtors have little cash flow, factor (7) the Debtors can't meet current expenses, and factor (8) the Debtors have no employees, should not be mechanically applied here, as the Debtors are holding companies formed for the specific purpose of purchasing the Hotel. The use of a holding company is routine in sophisticated real estate transactions. Holding companies generally only have one asset and no employees as they usually engage in no other business, other than to act as owner of the property being purchased. The Bankruptcy Code does not statutorily preclude such entities from filing for chapter 11 relief.

29. Factor (3) the debtor's one asset is the subject of a foreclosure action is not applicable. The Debtors are not subject to a foreclosure action and the Debtors have no secured creditors. Factor (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors that can be resolved in a pending foreclosure action does not apply. The Debtors have one large unsecured creditor on account of the $5.1 million deposit held by the title company plus other monies which have been advanced which the Debtors obtained via a loan from an affiliate.

30. Finally, when a case is in its very early stages (here the schedules and statement of financial affairs are not even due yet) and a possibility of reorganization exists, dismissal is not warranted. In re Cardinal Congregate I, 113 B.R. 371 (Bankr. S.D. Ohio 1990); See also, In

---

[2] Posadas makes much of the fact the Debtors sought and were denied relief in Puerto Rico. This is a red herring as Judge Odorisi specifically stated at oral argument on the motion to enjoin the Debtors from continuing litigation in Puerto Rico that the Debtors did not act in bad faith as the New York courts were closed to new filings when the Debtors filed the lawsuit in Puerto Rico. See footnote 5 of Judge Odorisi's July 9, 2020 decision as well as the transcript annexed as exhibit 41 to the Motion, page 20, lines 20 to 25.

{Client/001768/56/02182903.DOC;2 }	10

re Foundry of Barrington Partnership 129 B.R. 550 (Bankr. N.D. Ill 1991). In In re Cardinal Congregate I, creditors moved to dismiss the case within two months after the chapter 11 filing. The bankruptcy court found that because the case was in existence for only a short time, it could not conclude that the debtor has no reasonable probability of rehabilitation. In re Cardinal Congregate I, 113 B.R. at 374.

31.     Here, the Debtors' chapter 11 cases are not even a week old and the Debtors have removed the State Court Action to this Court and are requesting mediation to resolve the dispute caused by the most economically devastating unforeseen event of our lifetime.

32.     It is well settled law the burden to establish cause for dismissal or conversion rests squarely on the party seeking such relief. In re Greene, 57 B.R. 277, 276 (Bankr. S.D.N.Y. 1986). Posadas has failed to carry its burden. For these reasons the Debtors' cases should not be dismissed.

II.    **IF THE COURT DETERMINES CAUSE EXISTS (BAD FAITH) TO DISMISS, THE COURT CAN STILL DENY THE REQUEST TO DISMISS AS THE COVID-19 PANDEMIC CONSTITUTES UNUSUAL CIRCUMSTANCES ESTABLISHING THAT DISMISSING IS NOT IN THE BEST INTEREST OF CREDITORS AND THE ESTATE**

33.     Section 1112(b)(2) of the Bankruptcy Code provides as follows:

> **(2)** The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
> **(A)** there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> **(B)** the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
> **(i)** for which there exists a reasonable justification for the act or omission; and
> **(ii)** that will be cured within a reasonable period of time fixed by the court.

34. Here, the Covid-19 pandemic and the doctrines of failure of consideration and frustration of purpose constitute unusual circumstances where dismissal is not in the best interest of creditors and the estate.

35. If this Court dismisses these chapter 11 filings, it is likely Posadas will sell the Hotel to a third party if the Debtors cannot post the $9.2 million bond. In this situation, the Debtors will suffer irreparable harm as real estate is a unique asset. See, Siras Partners LLC v. Activity Kuafu Hudson Yards LLC, 2018 WL 1363411 (N.Y.Sup., N. Y Cty 2018)("The loss of a substantial interest in real property constitutes irreparable harm because 'each parcel of real property is unique.'" (quoting *Concourse Rehab. & Nursing Ctr, Inc. v Gracon Assocs.*, 64 AD3d 405, 405 [1st Dept 2009].)); Voyiatgis v. Lelekakis, 59 Misc.3d 1225(A), 107 N.Y.S.3d 817, 2018 N.Y. Slip Op. 50702(U)(N.Y. Sup. Ct. 2018)(further enjoining the transfer of certain real property, stating "[c]oncerning the balancing of the equities and irreparable harm, the Court observes that an interest in real property is unique in and money damages may not be an adequate remedy"). Additionally, there is a good chance the Debtors and the Debtors' affiliate will lose the $5.1 million contract deposit plus an additional $1.5 million lent for due diligence and litigation expenses.

36. Here, the grounds for dismissing these cases is not substantial or continuing loss or diminution of the estate and an absence of a reasonable likelihood of rehabilitation. Additionally, there exists a reasonable justification for the Debtors' failure to close under the PSA as Posadas cannot deliver what the PSA required it to deliver (an operating hotel with employees and goodwill). The Debtors can remedy this by either closing with sixty (60) days as permitted by §108(b) of the Bankruptcy Code or the Debtors who have removed the State Court Action can prosecute their counterclaims for recission under the related doctrines of failure of consideration and frustration of purpose.

37. As such, pursuant to §1112(b)(2), the Court should not dismiss these chapter 11 cases as there are unusual circumstances here which weigh against dismissal.

### III. THE DEBTORS HAVE REMOVED THE STATE COURT ACTION, THE LIFT STAY ASPECT OF THE MOTION IS MOOT AND THE COURT SHOULD EXERCISE ITS RIGHT TO REFER THE REMOVED ACTION TO MEDIATION

38. The Debtors have filed a notice of removal and the State Court Action is no longer pending in state court. See **Exhibit "A."**

39. As such, the stay relief aspect of the Motion is moot. Posadas can of course file a remand motion but the request for stay relief to proceed in another court is moot.

40. The Debtors respectfully request this Court refer the removed State Court Action to mediation. Section 1.1 of this Court's procedures governing mediation of matters states the court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee. Here, the Debtors submit mediation is the most cost efficient way to resolve the disputes arising from the PSA. This is especially true in view of Posadas' claim that they have at least one other interested purchaser and Posadas has made it clear they are essentially a caretaker of the Hotel which is being sold for a price below the debt on the Hotel. See, Poyiadjis Decl. at ¶ 17.

41. The Debtors are willing to fund the cost of the mediator entirely in order to facilitate a resolution of the dispute.

**WHEREFORE,** the Debtors seek entry of an order denying the Motion and granting Debtors request to refer the removed State Court Action to mediation and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
      September 15, 2020

**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for*
*Debtors and Debtors-in-Possession*

By: /s/ Scott S. Markowitz
    Scott S. Markowitz, Esq.
    Anthony Dougherty, Esq.
    1350 Broadway, 11th Floor
    New York, New York 10018
    (212) 216-8000
    smarkowitz@tarterkrinsky.com
    adougherty@tarterkrisnky.com

**EXHIBIT A**

**Query**  **Reports**  **Utilities**  **Help**  **Log Out**

ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20-cv-07455-MKV

| | |
|---|---|
| Posadas De Puerto Rico Associates, L.L.C. v. Condado Plaza Acquisition, LLC et al | Date Filed: 09/11/2020 |
| Assigned to: Judge Mary Kay Vyskocil | Jury Demand: None |
| Case in other court: Supreme Court of the State of NY, County of Monroe, EF2020003156 | Nature of Suit: 190 Contract: Other |
| | Jurisdiction: Federal Question |
| Cause: 28:1452 R&R re motions to remand (non-core) | |

**Plaintiff**

**Posadas De Puerto Rico Associates, L.L.C.**

V.

**Defendant**

**Condado Plaza Acquisition, LLC**  represented by **Scott Samuel Markowitz**
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
(212) 216-8000
Fax: (212) 216-8001
Email: smarkowitz@tarterkrinsky.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Condado Plaza Acquisition Ocean, LLC**  represented by **Scott Samuel Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Condado Plaza Acquisition Lagoon, LLC**  represented by **Scott Samuel Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/11/2020 | 1 | NOTICE OF REMOVAL from Supreme Court of the State of New York, County of Monroe. Case Number: EF2020003156. (Filing Fee $ 400.00, Receipt Number ANYSDC-21612602).Document filed by CONDADO PLAZA ACQUISITION OCEAN, LLC, CONDADO PLAZA ACQUISITION LAGOON, LLC, CONDADO PLAZA ACQUISITION, LLC,. (Attachments: # 1 Exhibit Summons and Complaint, # 2 Exhibit |

|  |  |  |
|---|---|---|
|  |  | Answer and Counterclaims).(Markowitz, Scott) (Entered: 09/11/2020) |
| 09/11/2020 | 2 | CIVIL COVER SHEET filed..(Markowitz, Scott) (Entered: 09/11/2020) |
| 09/14/2020 |  | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Scott Samuel Markowitz. The party information for the following party/parties has been modified: CONDADO PLAZA ACQUISITION OCEAN, LLC, CONDADO PLAZA ACQUISITION LAGOON, LLC, CONDADO PLAZA ACQUISITION, LLC, POSADAS DE PUERTO RICO ASSOCIATES, L.L.C.. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps;. (pc)** (Entered: 09/14/2020) |
| 09/14/2020 |  | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Mary Kay Vyskocil. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 09/14/2020) |
| 09/14/2020 |  | Magistrate Judge Sarah Netburn is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 09/14/2020) |
| 09/14/2020 |  | Case Designated ECF. (pc) (Entered: 09/14/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/15/2020 13:12:36 | | | |
| **PACER Login:** | tk0132 | **Client Code:** | 999 |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-07455-MKV |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |