Aaron Marks, P.C.
Joseph M. Sanderson
Kimberly Pageau
Jace A. Cearley
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Chad J. Husnick, P.C.
Richard U.S. Howell, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to Posadas de Puerto Rico Associates, L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| CONDADO PLAZA ACQUISITION LLC, *et al.*,[1] | ) ) Case No. 20-12094 (MEW) |
| Debtor. | ) ) Jointly Administered |

**SUPPLEMENT TO POSADAS DE PUERTO RICO ASSOCIATES, L.L.C.'S MOTION TO DISMISS THE CHAPTER 11 CASES OF CONDADO PLAZA ACQUISITION LLC, CONDADO PLAZA ACQUISITION LAGOON, LLC, AND CONDADO PLAZA ACQUISITION OCEAN, LLC, OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY**

---

[1] The last four digits of CPA employer identification number are 2094, the last four digits of Ocean's employer identification number are 2095, and the last four digits of Lagoon's employer identification number are 2096. Each of the Debtors maintains a mailing address at 1325 Avenue of the Americas, 28th Floor, New York, New York 10019.

## TABLE OF CONTENTS

**Page(s)**

**PRELIMINARY STATEMENT** ................................................................................................. **1**

**ARGUMENT** ......................................................................................................................... **2**

**I.     THE AGREEMENT WAS PROPERLY TERMINATED FOR CONDADO'S
        BREACH ON MAY 11, 2020.** ......................................................................................... **4**

**II.    EVEN ASIDE FROM CONDADO'S DEFAULT, THE AGREEMENT
        TERMINATED BEFORE CONDADO FILED THESE CASES.** ............................ **20**

**CONCLUSION** ................................................................................................................... **26**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*101123 LLC v. Solis Realty LLC*,
  23 A.D.3d 107 (1st Dep't 2005) .......................................................................3, 21

*331 E. 14th St. LLC v. 331 E. Corp.*,
  293 A.D.2d 361 (1st Dep't 2002) ............................................................................24

*407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*,
  23 N.Y.2d 275 (1968) ....................................................................................16, 17

*In re AAGS Holdings LLC*,
  608 B.R. 373 (Bankr. S.D.N.Y. 2019) .................................................................5, 19

*Arker Cos. v. New York State Urban Dev. Corp.*,
  47 A.D.3d 739 (2d Dep't 2008) ...............................................................................21

*Bessemer Tr. Co. v. Branin*,
  16 N.Y.3d 549 (2011) ..............................................................................................11

*Brickstone Grp., Ltd. v. Randall*,
  172 A.D.3d 671 (2d Dep't 2019) ...............................................................................4

*In re Brown*,
  242 N.Y. 1 (1926) ....................................................................................................11

*Butner v. United States*,
  440 U.S. 48 (1979)......................................................................................................2

*Cobalt Multifamily Invs. I, LLC v. Bridge Capital (USVI), LLC*,
  No. 06 Civ. 5738 (KMW)(MHD),
  2007 WL 2584926 (S.D.N.Y. Sept. 7, 2007).........................................................17

*Cruz v. TD Bank, N.A.*,
  22 N.Y.3d 61 (2013) ................................................................................................12

*In re Dayton Seaside Assocs. No.2, L.P.*,
  257 B.R. 123 (Bankr. S.D.N.Y. 2000) .......................................................................4

*Edwards v. McLean*,
  122 N.Y. 302 (1890) ................................................................................................19

*In re Empire Equities Capital Corp.*,
  No. 09-12751 (ALG), 2010 WL 1849391 (Bankr. S.D.N.Y. May 6, 2010)............19

**Page(s)**

*Faunus Grp. Int'l, Inc. v. Ramsoondar*,
No. 13 Civ. 6927 (HB), 2014 WL 2038884 (S.D.N.Y. May 16, 2014).................................16

*In re Food Mgmt. Grp., LLC*,
372 B.R. 171 (Bankr. S.D.N.Y. 2007) ..................................................................................25

*George Backer Mgmt. Corp. v. Acme Quilting Co.*,
46 N.Y.2d 211 (1978) ...........................................................................................................24

*Health-Chem Corp. v. Baker*,
915 F.2d 805 (2d Cir. 1990)..................................................................................................18

*Highbridge House Ogden LLC v. Highbridge Entities, LLC*,
145 A.D.3d 487 (1st Dep't 2016) .........................................................................................22

*Holland Loader Co., LLC v. FLSmidth A/S*,
313 F. Supp. 3d 447 (S.D.N.Y. 2018),
*aff'd*, 769 F. App'x 40 (2d Cir. 2019)...........................................................................14, 15

*JFK Holding Co. LLC v. City of New York*,
21 N.Y.3d 722 (2013) ...........................................................................................................14

*Kel Kim Corp. v. Cent. Mkts., Inc.*,
70 N.Y.2d 900 (1987) ...........................................................................................................17

*Legum v. Russo*,
133 A.D.3d 638 (2d Dep't 2015) .............................................................................................9

*Levitt Corp. v. Levitt*,
593 F.2d 463 (2d Cir. 1979)..................................................................................................11

*M & E 73-75, LLC v. 57 Fusion LLC*,
No. 11156, 2020 WL 4354318 (App. Div. 1st Dep't July 30, 2020) ....................................23

*Mar-Cone Appliance Parts Co. v. Mangan*,
879 F. Supp. 2d 344 (W.D.N.Y. 2012) .................................................................................12

*Marshak v. Green*,
746 F.2d 927 (2d Cir. 1984)..................................................................................................11

*Matusik v. Emmerling*,
202 A.D.2d 944 (3d Dep't 1994) ..........................................................................................24

*Mehlman v. 592-600 Union Ave. Corp.*,
46 A.D.3d 338 (1st Dep't 2007) .......................................................................................4, 23

**Page(s)**

*Mohawk Maint. Co., Inc. v. Kessler*,
    52 N.Y.2d 276 (1981) ...................................................................................11

*Morey v. Sings*,
    174 A.D.2d 870 (3d Dep't 1991) ....................................................................16

*Ness Techs. S.A.R.L. v. Pactera Tech. Int'l Ltd.*,
    173 A.D.3d 635 (1st Dep't 2019) .................................................................3, 20

*In re New Breed Realty Enterprises, Inc.*,
    278 B.R. 314 (Bankr. E.D.N.Y. 2002) ..........................................................3, 4

*Pramco III, LLC v. Partners Tr. Bank*,
    16 Misc. 3d 351 (Sup. Ct., Monroe County 2007),
    *aff'd*, 52 A.D.3d 1224 (4th Dep't 2008) .........................................................9, 10

*Rebell v. Trask*,
    220 A.D.2d 594 (2d Dep't 1995) ....................................................................18

*Rockland Dev. Assocs. v. Richlou Auto Body, Inc.*,
    173 A.D.2d 690 (2d Dep't 1991) ....................................................................18

*Rudnick v. Glendale Sys., Inc.*,
    222 A.D.2d 572 (2d Dep't 1995) ......................................................................9

*Rufeh v. Schwartz*,
    50 A.D.3d 1000 (2d Dep't 2008) ....................................................................25

*Sciuto v. Iannucci Food Corp.*,
    219 A.D.2d 635 (2d Dep't 1995) ....................................................................24

*SDK Prop. One, LLC v. QPI-XXXII, LLC*,
    143 A.D.3d 800 (2d Dep't 2016) ....................................................................22

*Shannon v. Simon*,
    128 A.D.2d 859 (2d Dep't 1987) ......................................................................6

*In re Southold Dev. Corp.*,
    134 B.R. 705 (E.D.N.Y. 1991) .........................................................................5

*Spaulding v. Benenati*,
    57 N.Y.2d 418 (1982) .....................................................................................11

*Town House Stock LLC v. Coby Hous. Corp.*,
    49 A.D.3d 456 (1st Dep't 2008) .......................................................................4

**Page(s)**

*United States v. Gen. Douglas MacArthur Senior Vill., Inc.*,
  508 F.2d 377 (2d Cir. 1974)....................................................................18, 24, 25

*Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co.*,
  1 N.Y.3d 470 (2004) ...............................................................................................21

*Warner v. Kaplan*,
  71 A.D.3d 1 (1st Dep't 2009) .................................................................................18

*Zelmanovitch v. Ramos*,
  299 A.D.2d 353 (2d Dep't 2002) ............................................................................23

**Statutes**

1 L.P.R.A. § 71 ...............................................................................................................7

11 U.S.C. § 108(a) .......................................................................................................22

11 U.S.C. § 108(b) ............................................................................................... *passim*

11 U.S.C. § 365.............................................................................................................19

N.Y. Gen. Const. Law § 24...........................................................................................7

**Other Authorities**

28A N.Y. Prac., Contract Law § 20:3...........................................................................17

Restatement (Second) of Contracts § 270 (1981) .......................................................25

## PRELIMINARY STATEMENT[2]

1.      This Court ordered supplemental briefing regarding whether the Debtors ("Condado") have any legal basis to support their assertion that their time to close under the Purchase and Sale Agreement (the "Agreement"), as amended, under which the time-is-of-the-essence Closing was to take place on May 11, 2020, and the Outside Date for Closing was July 31, 2020, "ha[d] not expired before the date of the filing of the petition" under applicable nonbankruptcy law. 11 U.S.C. § 108(b). There is none, for two independent reasons.

2.      *First*, the Agreement has long since been terminated for Condado's breach. Posadas de Puerto Rico Associates, L.L.C. ("Posadas") appeared at the Closing on May 11, 2020, ready, willing, and able to convey all the Assets. Condado failed to deposit the purchase price into escrow and then failed to appear at the Closing. Every excuse Condado has attempted to raise for its failure to close is belied by the unambiguous language of the Agreement and Amendments, and by basic principles of New York contract law. Condado's time to close thus expired when Posadas sent notice of termination based on Condado's breach, approximately four months before the date the petition was filed.

3.      *Second*, even if Condado's failure to close were somehow excused by any of the assortment of theories it has attempted to invoke, none of that would entitle Condado to rewrite the clear language of the Agreement and amendments that (a) set an Outside Date of July 31, 2020, (b) repeatedly declared time to be of the essence, and (c) contained a limitation of remedies provision that required Condado to seek specific performance within 30 days. Even if defenses such as frustration of purpose or impossibility applied, their effect would be to discharge the

---

[2]     Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meaning ascribed to them in the Purchase and Sale Agreement and the amendments thereto.

contract or permit rescission, not to allow the Court to rewrite the contract to eliminate the express deadlines that the parties not only agreed to but further agreed that time would be of the essence. And even if Condado's contra-textual theories for why Posadas, and not Condado, supposedly breached the contract were right, Condado had 30 days to seek specific performance—and instead of doing so, it told a Puerto Rico court that specific performance would be an injustice. Because Condado did not seek specific performance within 30 days of the supposed breach (and indeed, did not seek specific performance before the Outside Date), the time to do so expired. If Condado had any remedy at that point, it was limited to the Earnest Money; it had no right to force a closing. Section 108(b) thus does not permit Condado to revive a right to close that was already dead before it filed these cases.

## **ARGUMENT**

4.      Section 108(b) of the Bankruptcy Code provides that:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of-- (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief.

11 U.S.C. § 108(b).

5.      Whether time had expired prior to the date of the filing of the petition is a question under the governing law of the Agreement. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because

2

an interested party is involved in a bankruptcy proceeding."). Here, that is (in relevant part) New York law. Ex.[3] 18 § 14.13.

6.      New York law here is clear: when Condado let the time-is-of-the-essence Closing Date pass and refused to attend the Closing, it incurably and materially defaulted, and its time to close expired under nonbankruptcy law. "Cases interpreting New York law are unanimous in holding that the failure to close by the specified closing date in a sales contract that declared time to be of the essence," as the Agreement did, "is a material breach which terminates [the] defaulting party's right to enforce the contract." *In re New Breed Realty Enterprises, Inc.*, 278 B.R. 314, 322 (Bankr. E.D.N.Y. 2002). Every one of the theories that Condado has asserted to attempt to excuse its failure to close is facially meritless. Condado does not come close to meeting the high standards to assert an impossibility, frustration of purpose, or failure of consideration defense under New York law, and its creative interpretation of the term "goodwill" in a list of general intangibles as a promise of goodwill of a particular value, despite an express disclaimer to the contrary, similarly fails.

7.      Nor, even if Condado's failure to close was somehow excused, did the contract remain live. The Agreement, as amended, contained both an Outside Date of July 31, 2020, Ex. 23 § 1, and an express limitation of remedies provision that restricted Condado to the return of its Earnest Money deposit if Posadas breached unless it filed a specific performance suit within 30 days, Ex. 18 § 12.2(c). Both such terms are routinely enforced in New York. *E.g.*, *Ness Techs. S.A.R.L. v. Pactera Tech. Int'l Ltd.*, 173 A.D.3d 635, 635-36 (1st Dep't 2019) ("[O]nce the Outside Date of October 27, 2017 had passed . . . neither specific performance nor an injunction would have remedied defendant's breach."); *101123 LLC v. Solis Realty LLC*, 23

---

[3]      "Ex." refers to exhibits to the exhibits to the Declaration of Aaron Marks, ECF No. 12.

A.D.3d 107, 113 (1st Dep't 2005) ("[T]he court may not look beyond the agreed-upon remedies to award the buyer specific performance in circumstances other than those in which the parties agreed that it would be available."). Indeed, under New York law, if a buyer refuses either to exercise any of the limited remedies provided for in the contract or waive the breach, the buyer is itself in breach. *Mehlman v. 592-600 Union Ave. Corp.*, 46 A.D.3d 338, 343 (1st Dep't 2007). And, even if the risk of the pandemic, which was not just foreseeable but actually present at the time the parties reaffirmed the contract in the Third Amendment, "would frustrate the purpose of the contract, the Court cannot rewrite the parties' agreement and provide [terms] they never agreed to." *In re Dayton Seaside Assocs. No.2, L.P.*, 257 B.R. 123, 139 (Bankr. S.D.N.Y. 2000). In short, Condado cannot possibly show that the time to close had not expired before it filed these cases, and 11 U.S.C. § 108(b) thus provides it with no help.

## I.    THE AGREEMENT WAS PROPERLY TERMINATED FOR CONDADO'S BREACH ON MAY 11, 2020.

8.      Condado defaulted months before it filed these cases. As the *New Breed* court observed, "[c]ases interpreting New York law are unanimous in holding that the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates [the] defaulting party's right to enforce the contract." 278 B.R. at 322; *see also Brickstone Grp., Ltd. v. Randall*, 172 A.D.3d 671, 672 (2d Dep't 2019) ("The seller further established, prima facie, that the buyer was in default when it failed to appear, and was not ready, willing, and able to close on that date."); *Town House Stock LLC v. Coby Hous. Corp.*, 49 A.D.3d 456, 456 (1st Dep't 2008) ("The record evidence established that plaintiffs duly tendered the signed and notarized deed and other closing documents, while defendants-appellants failed to

tender the requisite $95 million."). [4] Here, time was of the essence, Posadas appeared at the Closing

ready, willing, and able to perform, and Condado failed to tender payment, make its deliveries into

escrow, or send a representative such as its Puerto Rico counsel to execute the Conveyance

Documents before the Puerto Rico Notary. It was thus in material, incurable default, and its time

to enforce the Agreement and close had expired in May.

### A.    Time Was of the Essence.

9.    Under the Agreement as amended through the Third Amendment, time was

unambiguously of the essence. The contract repeatedly and unambiguously provides that time was

of the essence, stating that "**TIME SHALL BE OF THE ESSENCE WITH RESPECT TO**

**[CONDADO]'S AND [POSADAS]'S OBLIGATIONS UNDER THIS AGREEMENT**

(subject to such adjournments of the Closing Date as are expressly permitted by this Agreement,

including, without limitation, Section 8.3(a))." Ex.18 § 2.3(a). It further stated that "[t]he Closing

Date shall in no event occur later than the later of (i) the Outside Closing Date and (ii) the Buyer's

Outside Closing Date, as applicable, unless agreed in writing by the parties hereto" (*id.*), and that

"[Posadas] and [Condado] agree that time is of the essence with respect to the obligations of

[Posadas] and [Condado] under this Agreement." *Id.* § 14.21. The Second Amendment further

provided that "in the event that the Closing does not occur on the New Scheduled Closing Date,

(x) Escrow Agent shall immediately release the Earnest Money to Seller and (y) Buyer shall not

have any right to object to the release of the Earnest Money to Seller." Ex. 22 § 2.

---

[4]  There is some dispute among New York courts as to whether, absent specific provision in the contract, termination is automatic or whether it requires notice of termination, *compare In re AAGS Holdings LLC*, 608 B.R. 373, 379 (Bankr. S.D.N.Y. 2019)*, with In re Southold Dev. Corp.*, 134 B.R. 705, 710 (E.D.N.Y. 1991), but since Posadas served notice of termination here, Ex. 29, that issue does not arise in this case.

10.    Moreover, the May 7, 2020 letter from Posadas's counsel unequivocally stated that "both parties agreed that time is of the essence with respect to Buyer's and Seller's obligations under the Purchase Agreement" and that "Seller notes it expects Buyer to comply with its obligations under the Purchase Agreement and close on May 11, 2020 as Seller will be ready, willing and able to close on such date." Ex. 28 at 3. That would be enough to make time of the essence if it had not already been clear under the Agreement. *Shannon v. Simon*, 128 A.D.2d 859, 859 (2d Dep't 1987) ("The correspondence of the defendants' attorney constituted clear and unequivocal notification that time was to be of the essence.").

11.    Nor is there any question that May 11, 2020 was the agreed-upon time-is-of-the-essence Closing Date. Under the Third Amendment, the New Scheduled Closing Date was "the later to occur of (x) April 17, 2020 and (y) date that is five (5) Business Days following the applicable Governmental Authority permitting the operations of the Registry of Property, law firm offices and notary public in San Juan, Puerto Rico in accordance with the Purchase Agreement [as amended by the First and Second Amendments], provided that in no event shall the New Scheduled Closing Date be later than July 31, 2020." Ex. 23 § 1. The Governmental Authority that had been prohibiting the operation of law firm offices and notaries public in San Juan, Puerto Rico, was Governor Vázquez through her emergency Executive Orders. Exs. 32 & 33. Pursuant to Executive Order 2020-038, the applicable Governmental Authority permitted the operations of law firm offices and notaries public in San Juan, Puerto Rico effective as of Monday, May 4, 2020. Ex. 34 § 6(21)-(22). The same order allowed people to leave their homes to visit exempted businesses or receive exempted services as of May 4, 2020. *Id.* § 1(c)–(e). The Registry of Property never ceased operations. Ex. 31 ¶ 7. Five Business Days after Monday, May 4, 2020 was Monday, May 11,

2020,[5] so under Section 1 of the Third Amendment, the New Scheduled Closing Date was May 11, 2020.

12.    To ensure that the Closing could lawfully proceed on the New Scheduled Closing Date, Posadas' Puerto Rico counsel, O'Neill & Borges LLC, submitted all of the protocols and certifications needed to complete the in-person Closing on May 11, 2020. Declaration of Marta Ramírez-Isern ("Ramírez-Isern Decl.") Ex. 1. Indeed, Posadas's Puerto Rico counsel also emailed the regulatory body for notaries in Puerto Rico to make sure that they could perform notarial duties at a real estate closing, and received confirmation that they could. Ramírez-Isern Decl. ¶ 10 & Ex. 2. All Puerto Rico health requirements were satisfied by the Closing Date. Ramírez-Isern Decl. ¶ 11.

**B.    Posadas Was Ready, Willing, and Able to Perform on May 11, 2020—and Indeed Tendered Performance.**

**1.    Posadas Properly Tendered Performance.**

13.    While Condado's unequivocal statement that it would not appear at the Closing and its failure to deposit the Purchase Price would have entitled Posadas not to make a tender of performance, Posadas nevertheless proceeded to make a tender of performance at the scheduled Closing. Pursuant to Section 2.3(b) of the Agreement, the Closing was to be "held on the Closing Date at 1:00 P.M. (New York Time) by mutually acceptable escrow arrangements." Ex. 18 § 2.3(b). "For purposes of executing the Conveyance Documents," Posadas was required to cause a Person "to be present in Puerto Rico before the required to sign documents in the presence of the applicable Puerto Rico Notary." *Id.* Posadas designated Noel Vera-Ramírez, its Puerto Rico

---

[5]    The Agreement defines the term "Business Days" to mean "any day other than a Saturday, Sunday or other day on which banks are authorized or required by Applicable Law to be closed in the Commonwealth or the city of New York, New York." Ex. 18 § 1.1. There were no public holidays between May 4, 2020, and May 11, 2020, under either New York law, N.Y. Gen. Const. Law § 24, or Puerto Rico law, 1 L.P.R.A. § 71.

counsel, who was present in Puerto Rico, to sign the Conveyance Documents through a corporate resolution. Ramírez-Isern Decl. Ex. 3. Mr. Vera-Ramírez was present at 1:00 P.M. (New York Time) before the designated Puerto Rico Notary,[6] Marta S. Ramírez-Isern (who is also an attorney at O'Neill & Borges LLC and counsel to Posadas). Mr. Vera-Ramírez was fully authorized and ready to sign the Conveyance Documents. Declaration of Byron Blount ¶ 3; Ramírez-Isern Decl. ¶ 13. As noted above, it was lawful for a real estate closing to take place in Puerto Rico on May 11, 2020, as long as the appropriate safety plan and self-certification had been completed, which they had been. Ramírez-Isern Decl. ¶¶ 3-5, 9-13 & Exs. 1-2. Indeed, the regulator of notaries in Puerto Rico had expressly stated that it was lawful for notaries to perform real estate closings. Ramírez-Isern Decl. Ex. 2. The office of O'Neill & Borges LLC was open to individuals by appointment, and if anyone had arrived to represent Condado, they would have been able to execute the Conveyance Documents. Ramírez-Isern Decl. ¶¶ 14-19.

14.     For the remaining Closing Documents, Posadas' New York deal counsel delivered them, duly executed, to the Escrow Agent, as required by Section 6.2 and Section 2.3(b) of the Agreement. Declaration of Erik Quarfordt Ex. 1. The form of the Closing Documents (including the Conveyance Documents) had been agreed as exhibits to the Agreement, and pursuant to Section 2 of the First Amendment and Schedule A thereto, the parties agreed that they had "reviewed and approved" the Closing Documents. Ex. 21.

### 2.     Posadas Was Able to Convey the Property to Condado.

15.     Condado has contended that Posadas was not able to perform because it claims that the Agreement required Posadas to convey a "viable and operational" Hotel. Ex. 5 ¶ 65. These

---

[6]     Under Section 9.1 of the Agreement, Posadas "shall select the notary public for the Conveyance Documents and shall pay all notary fees incurred in connection with the Conveyance Documents."

terms appear **nowhere** in the Agreement. To the contrary, the Agreement expressly and unequivocally **disclaims** any representation, warranty, condition, or contingency regarding the "Condition of the Assets," defined as "**THE ECONOMIC FEASIBILITY, CASH FLOW AND EXPENSES OF THE ASSETS, AND HABITABILITY, MERCHANTABILITY, FITNESS, SUITABILITY AND ADEQUACY OF THE PROPERTY FOR ANY PARTICULAR USE OR PURPOSE (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY RENOVATION OR REDEVELOPMENT OF THE PROPERTY).**" Ex. 18 § 7.4. Moreover, the Agreement states that "**BUYER AGREES THAT THE ASSETS WILL BE SOLD AND CONVEYED TO (AND ACCEPTED BY) BUYER AT THE CLOSING IN THE THEN EXISTING CONDITION OF THE ASSETS, AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WRITTEN OR VERBAL REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS OR IMPLIED OR ARISING BY OPERATION OF LAW, OTHER THAN AS EXPRESSLY SET FORTH IN THIS AGREEMENT.**" *Id.*

16.    Posadas thus did not promise to convey a viable and operational Hotel—it agreed to convey, and Condado agreed to accept, the Property, as well as the Asset-Related Property, as they were, whether economically viable (or even habitable) or not. New York courts routinely enforce such provisions in sale agreements to bar claims that assets were unsatisfactory. *E.g.*, *Rudnick v. Glendale Sys., Inc.*, 222 A.D.2d 572, 573 (2d Dep't 1995); *Legum v. Russo*, 133 A.D.3d 638, 640 (2d Dep't 2015); *Pramco III, LLC v. Partners Tr. Bank*, 16 Misc. 3d 351, 359 (Sup. Ct., Monroe County 2007) (under either fraud or breach of warranty theory, party faced "daunting task" in light of disclaimers in "distressed" asset sale, including "AS IS" provision), *aff'd,* 52 A.D.3d 1224 (4th Dep't 2008). In short, Condado cannot smuggle into the Agreement an unwritten

promise of operationality and viability that is directly at odds with the Agreement's express disclaimers.

17.     Perhaps recognizing the "daunting task" it faces to overcome an as-is clause and other disclaimers without a single contract term on its side, *Pramco*, 16 Misc. 3d at 359, Condado has also attempted to contend that Posadas could not satisfy its obligations at Closing because the Assets to be conveyed included "goodwill" and the Hotel's goodwill had, according to Condado, declined. However, the Agreement does not contain any promise or covenant that the Hotel's goodwill has any particular value (or even any value at all); to the contrary, the "Condition of the Assets" disclaimer applies to intangibles such as goodwill.

18.     Condado's argument is meritless for a number of reasons. Most significantly, even if Posadas really *were* unable to convey goodwill at Closing, Posadas was still ready, willing, and able to perform at Closing in full compliance with the terms of the Agreement. Goodwill is part of the "Asset-Related Property." Ex. 18 § 2.1(b). The Agreement unequivocally provides that while Posadas shall "use commercially reasonable efforts to transfer such Asset-Related Property at Closing"—"the failure of any or all of such Asset-Related Property to be transferred and the applicable closing deliveries with respect thereto to be delivered by Seller at Closing shall not be deemed a failure of a condition precedent to Buyer's obligations to consummate the Closing." *Id.* § 6.2(b). So long as Posadas was able at Closing to convey the Hotel building and the Hotel Land, Condado was obligated to close. *Id.* In short, Condado agreed that a completefailure to transfer the goodwill to be transferred would not excuse it from closing on the purchase.

19.     In any event, Posadas was in fact prepared to transfer all intangibles with respect to the Hotel, including goodwill, on the Closing Date. A transfer of goodwill has a well-established meaning: the opportunity to do business in the same location under the same trade name (and to

enjoy the same trademarks to protect them). As Judge Cardozo noted, "[t]he chief elements of value upon any sale of a good will are, first, continuity of place; and, second, continuity of name." *In re Brown*, 242 N.Y. 1, 7 (1926). More recently, the Court of Appeals enforced a contract for sale of the goodwill of a dental practice—even though the skill of an individual dentist could not be transferred—because "continuity of location of a professional office[] is a saleable asset which is attached to the place, not the person, and survives the death of that person." *Spaulding v. Benenati*, 57 N.Y.2d 418, 424 (1982). And the Second Circuit has held that "[w]hen a business purchases trademarks and goodwill, the essence of what it pays for is the right to inform the public that it is in possession of the special experience and skill symbolized by the name of the original concern, and of the sole authority to market its products." *Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979). A transfer of goodwill is necessary for the assignment of a hotel's trademarks— precisely why it is listed in the same section as logos and telephone numbers. *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984) ("[A] trademark cannot be sold or assigned apart from to goodwill it symbolizes."). But a transfer of goodwill is not a guarantee of continuing business success; to the contrary, the Court of Appeals has held that "a buyer assumes certain risks when he purchases an existing business and attempts to transfer the loyalties or 'good will' of that business as his own," including "the occurrence of a certain amount of attrition." *Bessemer Tr. Co. v. Branin*, 16 N.Y.3d 549, 557 (2011).

20.    In addition, Posadas could transfer the right to use the "Condado Plaza" name and associated trademarks. Posadas could also, for example, convey the right to enjoin Posadas from soliciting the Hotel's existing customers under the guise of being a continuation of the prior business—if Posadas had set up a new hotel next door and branded it "the real Condado Plaza," Condado could have sued. *See Mohawk Maint. Co., Inc. v. Kessler*, 52 N.Y.2d 276, 287 (1981);

11

*Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 369 (W.D.N.Y. 2012). Moreover, Condado had already approved the Closing Documents as part of the First Amendment, Ex. 21 § 2 & Schedule A), and none of those documents reflect any obligation as to the Hotel's business performance.

21.    In short, Posadas was able to convey exactly what it promised, which was the reputation of being a hotel located at 999 Ashford Avenue in San Juan, Puerto Rico, trading under the name "The Condado Plaza Hilton," with the associated trademark rights to protect that name. Condado's contention that "goodwill" includes, in essence, a promise that the economy will not deteriorate is absurd, and, if accepted, would endanger the enforceability of virtually every contract that includes the transfer of trademarks along with their associated goodwill.

22.    Finally, Condado's argument that Posadas was required to transfer exactly the same *value* of goodwill as at the time the Agreement was signed is also meritless because it violates fundamental principles of contract interpretation. To accept Condado's argument, one would have to believe that the parties fundamentally undermined the express disclaimers and limitations on covenants, representations and warranties, and conditions precedent, and instead intended to give Condado the option not to close whenever the value of the goodwill—a notoriously difficult thing to quantify—decreased at all. That defies every principle of interpreting a written legal document. *See Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 72 (2013) ("[L]egislative bodies generally do not 'hide elephants in mouseholes.'"). And this notion is completely undermined by Section 6.2(b) of the Agreement, which provides that even if Posadas was unable to convey any of the Hotel's goodwill at all, Condado was still 100% obligated to purchase the Hotel on the Closing Date.

### C.    Condado Had No Excuse under the Agreement for Its Failure to Close.

23.    Condado indisputably did not deposit the Purchase Price with the Escrow Agent by 10:00 A.M. on May 11, 2020; nor did it appear before the Puerto Rico Notary at 1:00 P.M. on May

11, 2020. To the contrary, it had unequivocally informed Posadas days before that it had no intent to close on the law day at all. Exs. 26 & 27. Under Section 12.1(a)(ii) of the Agreement, Posadas was entitled to terminate the Agreement prior to the Closing if there was "a material breach or default by Buyer in the performance of any of its obligations" under the Agreement, as amended. Ex. 18 § 12.1(a)(ii). Further, Section 12.1(a)(ii) states that, if Condado should fail to "pay the Purchase Price, deliver the documents as required pursuant to Section 6.1 or acquire the Assets on the Closing Date," then Condado "shall not be entitled" to receive written notice prior to termination or an opportunity to cure its material breach or default. *Id.* Posadas duly gave notice of Condado's material breach and Posadas' election to exercise its sole remedy under the contract of terminating it and retaining the Earnest Money. Ex. 29.

24.    Under the Agreement, Condado had no basis not to close. While Condado has variously asserted that Posadas was required to convey a "going concern" or "viable" Hotel, those terms appear nowhere in the Agreement (in contrast to the pages of disclaimers stating precisely the opposite). Condado seems to premise its argument on a flawed reading of Section 3.4 of the Agreement, which provides:

> From the Effective Date until the Closing or earlier termination of this Agreement, Seller or Seller's agents shall:
>
> (i) <u>Operation</u>. Use commercially reasonable efforts to cause Property Manager to operate and maintain the Property substantially consistent with the operation and maintenance of the Property over the previous three (3) month period. Notwithstanding anything to the contrary contained herein, Seller shall not be required … (D) to maintain operations at the hotel.

Ex. 18 § 3.4(a).

25.    In its state court counterclaims, Condado contended Condado Posadas failed to perform pursuant to Section 3.4(a)(i) because "Hotel occupancy as of May 11, 2020 was at almost zero percent (0%) because of the pandemic" Ex. 5 ¶ 48, a "portion of the Hotel" was closed, *id.*

13

¶ 49, the Hotel was operating with a "bare minimum 'skeleton crew,'" *id.*, and "all [of] the Hotel's food and beverage establishments" were purportedly closed, *id*. This argument falls flat on multiple grounds.

26.    ***First***, while compliance with covenants was ***originally*** a condition precedent, Ex. 18 § 5.2(b), ***Condado expressly waived all conditions precedent***. The Second Amendment is clear and unequivocal. In a section entitled "Waiver of Closing Conditions," the Second Amendment provides that "Buyer hereby agrees that (i) Buyer has waived all conditions precedent to Closing." Ex. 22 § 2. Thus, even if Posadas had violated a covenant, Condado would still not have the right not to close, because the "conditions precedent to Buyer's obligations set forth in Section 5.2" have been "waived by Buyer on or prior to the Closing Date." The Agreement expressly provides when Condado would have the right not to close. Ex. 18 § 12.2(a). The first is if "any of the conditions precedent to Buyer's obligations set forth in Section 5.2 have not been satisfied *or waived* by Buyer on or prior to the Closing Date." *Id.* § 12.2(a)(i) (emphasis added).

27.    ***Second***, even though compliance with the covenant in Section 3.4(a)(i) was indisputably waived by Condado, there would be no colorable argument of a violation even if Section 3.4(a)(i) had not been expressly waived by Condado. Before it was waived, Section 3.4(a)(i) obligated Posadas (or its agent) to use "commercially reasonable efforts to cause Property Manager to operate and maintain the Property," but Section 3.4(a)(i)(D) clarifies that Posadas is not required "to maintain operations at the hotel." Ex. 18 § 3.4(a). Such a clause is not an unqualified promise, but merely requires that a party act objectively reasonably. *Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 471 (S.D.N.Y. 2018), *aff'd*, 769 F. App'x 40 (2d Cir. 2019); *see also JFK Holding Co. LLC v. City of New York*, 21 N.Y.3d 722, 727 (2013) ("It was commercially reasonable for The Salvation Army to think that it was unlikely to recover

more than the City had paid it."). Thus, for example, a commercially reasonable efforts clause "does not require a party to act against its own business interests, which it has a legal privilege to protect." *Holland Loader*, 313 F. Supp. 3d at 472 (internal quotation marks omitted). A plaintiff is generally required to show what would have been commercially reasonable to do in the context of the industry in question. *Id.* Yet at last week's hearing, Condado's counsel conceded that the pandemic disruptions to the hospitality industry were not Posadas' fault. Further, to the extent that Condado would attempt to construe Section 3.4(a)(i) of the Purchase Agreement as a covenant to maintain the *profitability* of the Hotel at substantially the same level as the three months preceding the Agreement, the plain language of the Agreement defeats the argument. As noted above, Section 7.4 of the Agreement expressly disclaims unwritten representations, warranties, and conditions regarding "**THE ECONOMIC FEASIBILITY, CASH FLOW AND EXPENSES OF THE ASSETS**." Ex. 18 § 7.4(b)(ii). Because Section 3.4(a)(i) does not expressly represent or warrant that the Hotel will maintain a certain level of profitability (or profitability at all, for that matter), even without Condado having waived all covenants, Section 7.4(a) of the Agreement precludes Condado from reading implied warranties or representations into the text of Section 3.4(a)(i).

28.     Nor does Condado have any free-floating argument that Posadas failed to deliver the "benefit of the bargain," as it has asserted on a number of occasions. The bargain Condado actually made is the terms of the Agreement and the amendments—one which at the outset contained extensive disclaimers and as-is terms, minimal covenants, representations, warranties, and conditions, and no *force majeure* clause, and one where Condado by amendments after the risk of COVID-19 was well-known waived conditions precedent and agreed that if it failed to close for any reason, Posadas would receive the Earnest Money. Condado agreed to a contract that actively and explicitly disclaimed promises of profitability; it cannot now claim some atextual

entitlement to a guarantee that the Hotel would be profitable or that the value would not diminish between signing and closing. Condado agreed to buy an as-is Hotel and Posadas was able to convey an as-is Hotel; it is no defense if the contract was out-of-the-money or otherwise a worse deal than Condado had hoped. *See 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 282 (1968) ("In short, the applicable rules do not permit a party to abrogate a contract, unilaterally, merely upon a showing that it would be financially disadvantageous to perform it; were the rules otherwise, they would place in jeopardy all commercial contracts."). Condado's benefit-of-the-bargain argument is atextual and baseless.

### D.    Condado Has No Defense to Failure to Close.

29.    Condado's failure to perform is also not excused by any of the doctrines such as frustration of purpose, impossibility, and failure of consideration that it has attempted to invoke. Fundamentally, it agreed to an as-is purchase, waived all conditions precedent *after* COVID-19 was a known risk, and reaffirmed the contract even after COVID-19 shutdown orders were in effect. That a deal may be out-of-the-money is not a defense.

30.    ***Failure of Consideration***. Condado's failure of consideration defense is meritless. "An action for rescission based on failure of consideration lies where a plaintiff has received little or nothing of value." *Faunus Grp. Int'l, Inc. v. Ramsoondar*, No. 13 Civ. 6927 (HB), 2014 WL 2038884, at \*3 (S.D.N.Y. May 16, 2014) (internal quotation marks and brackets omitted). Where a party receives some consideration, "[i]t is quite clear that the adequacy of consideration is not a proper subject for judicial scrutiny." *Morey v. Sings*, 174 A.D.2d 870, 872 (3d Dep't 1991). Here, Condado would have received a 572-room hotel and the real estate underlying it. That it may have been somewhat less valuable than Condado had hoped is the risk Condado, as a sophisticated party represented by counsel, explicitly took in the Agreement—reaffirmed in each Amendment. Indeed, even where a party ultimately receives little or nothing, that is not failure of consideration if it is a

risk the party bore under the contract. *Cobalt Multifamily Invs. I, LLC v. Bridge Capital (USVI), LLC*, No. 06 Civ. 5738 (KMW)(MHD), 2007 WL 2584926, at *7 (S.D.N.Y. Sept. 7, 2007) ("[T]he fate of Eastern's hopes for an insurance recovery cannot be deemed a failure of consideration."). New York law does not relieve parties of their bargains merely because they turn out less well than they had hoped.

31.     ***Impossibility and/or Commercial Impracticability***. Commercial impracticability is a doctrine under the Uniform Commercial Code that does not apply to real estate sales. *See generally Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902 (1987) (in real estate case, citing article contrasting U.C.C. doctrine of commercial impracticability with common law of impossibility); 28A N.Y. Prac., Contract Law § 20:3. Common-law impossibility is a demanding standard. "Generally, once a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome." *Kel Kim*, 70 N.Y.2d at 902. Under New York law, "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible." *Id.* "Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Id.* The Court of Appeals held—in the context of a hotel closure—that "where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused," because the party "should have insisted that the agreement provide for the anticipated contingency of economic hardship." *407 E. 61st Garage*, 23 N.Y.2d at 281-82.

32.     So too here. It was possible for Condado to close—the legal obstacles to doing so had been lifted and the difficulty of travel was not a factor since Condado could have easily

17

authorized its Puerto Rican counsel to execute the Conveyance Documents on its behalf (as Posadas did and as Condado had done for the purpose of executing several of the other Closing Documents). Ramírez-Isern Decl. ¶¶ 12-13. Condado expressly reaffirmed the contract *three times* once the coronavirus pandemic was a well-known risk—the third time, *after* the pandemic had already disrupted a planned closing. Exs. 7-9, 21-23. What Condado is really complaining of is merely that its deal became less profitable or that it was unable to secure financing—not that it was impossible to perform.

33.      ***Frustration of Purpose***. For similar reasons, Condado's frustration-of-purpose defense fails. "In order to invoke the doctrine of frustration of purpose, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense." *Warner v. Kaplan*, 71 A.D.3d 1, 6 (1st Dep't 2009). "Discharge under" the frustration-of-purpose "doctrine has been limited to instances where a virtually cataclysmic, *wholly unforeseeable* event renders the contract valueless to one party." *United States v. Gen. Douglas MacArthur Senior Vill., Inc.*, 508 F.2d 377, 381 (2d Cir. 1974) (emphasis added). Moreover, "[i]t is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss." *Rockland Dev. Assocs. v. Richlou Auto Body, Inc.*, 173 A.D.2d 690, 691 (2d Dep't 1991); *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) (stock market decline insufficient to invoke frustration of purpose, even where it made "performance of the contract more onerous"). And, in any event, the "doctrine is not available where the event which prevented performance was foreseeable and provision could have been made for its occurrence." *Rebell v. Trask*, 220 A.D.2d 594, 598 (2d Dep't 1995).

34.      Here, the frustration argument fails for multiple independent reasons. Condado repeatedly reaffirmed the Agreement in the Amendments after the coronavirus pandemic was not

18

only foreseeable but had actually materialized (and, in the case of the Third Amendment, on the same day the parties exchanged dispute letters with the Escrow Agent about how COVID-19 impacted their closing obligations). If Condado had wanted to invoke frustration, that was the time to do it (if there was any time at all), but Condado instead chose to accept the risk and reaffirm the contract by entering into the Third Amendment. As Condado voluntarily assumed the risks posed by COVID-19, it cannot now invoke the pandemic as grounds to escape the contract. Moreover even if Condado had not reaffirmed the Agreement after the Coronavirus pandemic had already taken hold, a downturn in the hospitality industry as a result of a pandemic is hardly unforeseeable; after SARS, H1N1, H5N1, MERS, Zika, and Ebola—all of which arose in the last decade or two alone—the risk of epidemics and pandemics is well known and could have been guarded against by the inclusion of a *force majeure* clause, but no such clause was included. *See Edwards v. McLean*, 122 N.Y. 302, 307 (1890) (epidemic did not excuse performance of lease).

35.    In short, Condado had no viable excuse for its failure to attend the time-is-of-the-essence closing. Its failure to pay the purchase price and execute the deeds was thus a material breach, entitling Posadas to terminate the contract months before the bankruptcy filings, which Posadas did. Thus, this case is unlike *AAGS*, where the debtor filed its petition the same day as the closing and before any notice of termination was served, 608 B.R. at 379, or *Empire Equities*, where the debtor filed thirty-nine minutes before the closing, *In re Empire Equities Capital Corp.*, No. 09-12751 (ALG), 2010 WL 1849391, at *1 (Bankr. S.D.N.Y. May 6, 2010). Instead, Condado defaulted, Posadas terminated the Agreement for that default, and only months later did Condado file this case. That is far too late to enjoy an extension of time under 11 U.S.C. § 108(b) (or, for that matter, to assume the incurably-breached contract under 11 U.S.C. § 365).

## II.    EVEN ASIDE FROM CONDADO'S DEFAULT, THE AGREEMENT TERMINATED BEFORE CONDADO FILED THESE CASES.

36.    In any event, even if Condado could somehow show that the Agreement was not terminated for Condado's breach, there would still not be a live agreement to assume, for multiple independent reasons.

37.    *First*, the Third Amendment was subject to the proviso "that in no event shall the New Scheduled Closing Date be later than July 31, 2020 (the 'Outside Date')." Ex. 23 § 1. As noted above, the Third Amendment amended an agreement that repeatedly stated that time would be of the essence. Ex. 18 §§ 2.3(a), 14.21. Under the plain language of that provision, Condado could not compel Posadas to close after that date. New York cases concerning outside dates are unsurprisingly consistent with that: in *Ness Techs. S.A.R.L. v. Pactera Tech. Int'l Ltd.*, the First Department held in the context of a merger agreement that "neither specific performance nor an injunction" were available to remedy the failure to meet a condition precedent before the outside date, entitling 173 A.D.3d 635, 635-36 (1st Dep't 2019) ("[O]nce the Outside Date of October 27, 2017 had passed . . . neither specific performance nor an injunction would have remedied defendant's breach."). There is no authority whatsoever for the idea that an agreement expressly and unambiguously stating that *in no event* could a Closing Date be after the Outside Date is somehow subject to judicial extension because the parties were supposedly unable to close earlier. That defeats the whole point of an outside date, which is to let the parties know when the deal is dead and they can move on to other potential transactions, not to mention the express language of the term. If Condado had a right to force a Closing, that right expired before it filed for bankruptcy

20

(and indeed before it filed a specific performance claim in state court on August 7, 2020, Ex. 5).

Section 108(b)'s right to extend live rights gives Condado no right to revive expired rights.[7]

38.    ***Second***, and independently, if Posadas really could not deliver the property on the time-is-of-the-essence Closing Date and if Posadas' notice of termination was thus wrongful, the Agreement's limited remedies provisions dictates precisely the circumstances under which Condado would have the right to seek to compel Posadas to close by seeking specific performance. It is a basic rule of contract interpretation that "when parties set down their agreements in a clear, complete document, their writing should . . . be enforced according to its terms." *Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004). That applies with even more force "in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length." *Id.* New York courts thus strictly enforce limited-remedy clauses to which parties agree. *E.g.*, *101123 LLC*, 23 A.D.3d at 108 ("When a contract for the sale of real property contains a clause specifically setting forth the remedies available to the buyer if the seller is unable to satisfy a stated condition, fundamental rules of contract construction and enforcement require that we limit the buyer to the remedies for which it provided in the sale contract."); *Arker Cos. v. New York State Urban Dev. Corp.*, 47 A.D.3d 739, 739 (2d Dep't 2008). Thus, a court "may not look beyond the agreed-upon remedies to award the buyer specific performance in circumstances other than those in which the parties agreed that it would be available." *101123 LLC*, 23 A.D.3d at 113.

---

[7]    To the extent that any exceptions exist to this principle when a party intentionally tries to block performance by the other party, Condado has not alleged that here; to the contrary, it has consistently said that Posadas' supposed inability to perform was through no fault of Posadas, and that Condado was not willing to take the Hotel as it was for the contractual price any time before the Outside Date.

39.     Here, the parties expressly agreed to the conditions under which specific performance would be available. As to Posadas, the parties agreed that specific performance would not be an available remedy at all, but rather Posadas would be limited to pursuing the Earnest Money deposit if Condado breached. As to Condado, specific performance would be available as a remedy "provided that such specific enforcement action must be initiated no later than thirty (30) days following such default by Seller." Ex. 18 § 12.2(a)(ii), (c).[8]

40.     Condado failed to meet the requirement to initiate a specific performance claim "no later than thirty (30) days following such default by Seller." *Id.* § 12.2(c). New York courts routinely enforce such agreed-upon time limit provisions as to certain remedies. *E.g.*, *Highbridge House Ogden LLC v. Highbridge Entities, LLC*, 145 A.D.3d 487, 487 (1st Dep't 2016); *SDK Prop. One, LLC v. QPI-XXXII, LLC*, 143 A.D.3d 800, 801 (2d Dep't 2016). Condado's counterclaims here were filed on August 7, 2020, three months after the Closing Date—on which date Posadas allegedly failed to deliver an operational and viable hotel. Ex. 5. Condado's Puerto Rico lawsuit did not include a specific performance claim. Quite the opposite: Condado pleaded in Puerto Rico that the Puerto Rico court could invoke the Puerto Rico law doctrine of *rebus sic stantibus* to rewrite the contract because "good faith would be hurt or an injustice caused by obligating their specific performance." Ex. 36 ¶ 92. Having argued in Puerto Rico that specific performance would be an "injustice," and not having pleaded a count for specific performance, Condado cannot now claim that its Puerto Rico suit somehow satisfied the requirement to seek specific performance within 30 days.

---

[8]     Whether this provision is interpreted as "a period within which the debtor may commence an action" under 11 U.S.C. § 108(a) or "a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading" under 11 U.S.C. § 108(b), in either case, relief only exists under the Code if "such period has not expired before the date of the filing of the petition." 11 U.S.C. § 108(a), (b). Thus, there is no material difference between the analysis under the two subsections.

41.    Indeed, it is questionable at best whether even Condado's belated specific performance claim would satisfy the limited remedies provision, since Condado sought specific performance only on the condition that events outside the control of either party occurred (that Posadas somehow vitiate the effects of the pandemic). Under New York law, this negates a basic element of specific performance. *Zelmanovitch v. Ramos*, 299 A.D.2d 353, 354 (2d Dep't 2002) ("However, the plaintiff failed to attend the closing, despite claiming that he was ready, willing, and able to perform the contract on the law day. Therefore, he was not entitled to seek specific performance, regardless of whether the defendants were unable to convey the property in accordance with contract specifications."); *M & E 73-75, LLC v. 57 Fusion LLC*, No. 11156, 2020 WL 4354318, at *3-4 (App. Div. 1st Dep't July 30, 2020) (conditional demand to perform "provided that the seller, inter alia, corrected the tax misclassification and reduced the purchase price" failed to state a specific performance claim, instead "demonstrate that the buyer was not ready, willing and able to close."), If Condado wished to keep the Agreement alive and demand specific performance, it had to waive the purported breach and unconditionally take the Hotel as it was; it could not force Posadas to hold onto the Hotel indefinitely while waiting to see if exogenous events occurred.

42.    Under New York law, Condado's failure either to (a) waive the default and take the Hotel as it was, or (b) elect one of the two remedies authorized for Seller breach under the Agreement (i.e., termination or a suit for specific performance filed within 30 days) was itself a breach of the Agreement. *Mehlman*, 46 A.D.3d at 343 ("In short, because seller acted within its rights pursuant to [the limited remedies provision] of the contract, it is buyer, not seller, who breached the contract by failing to cancel the contract or take the property subject to the judgments."). Even if it were not a breach, however, at most Condado's failure to timely assert a

23

specific performance claim would amount to electing its sole other remedy, to terminate the contract and seek a refund of the Earnest Money. *See, e.g.*, *331 E. 14th St. LLC v. 331 E. Corp.*, 293 A.D.2d 361, 361 (1st Dep't 2002) (plaintiff deemed to have elected remedies and to have waived specific performance where "plaintiff, to his advantage, has been able to monitor the value of the building over a considerable period of time."). Having sued Posadas—and the Escrow Agent—in Puerto Rico *without* seeking specific performance and arguing that specific performance would be an "injustice," and having obtained preliminary remedies in that action and imposed costs on Posadas, if Condado did not breach by failing to elect a permitted remedy, it surely elected a remedy other than keeping the contract alive to be specifically performed. *Cf. Matusik v. Emmerling*, 202 A.D.2d 944, 944 (3d Dep't 1994) (failure to return deposit terminated contract, barring specific performance).

43.    ***Third***, even if Condado's theories of frustration or impossibility had the slightest merit—and as discussed above, they do not—their effect would be to *discharge* the Agreement or create a right of rescission, not to allow Condado essentially to reform the contract in a way directly contrary to its plain terms. Condado has never pleaded a reformation claim, and it would not be entitled to do so. "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219 (1978). By contrast, the theories Condado invokes discharge a contract or result in rescission. *Sciuto v. Iannucci Food Corp.*, 219 A.D.2d 635, 635 (2d Dep't 1995) ("Failure of consideration gives an aggrieved party the right to *rescind* a contract" (emphasis added)); *Gen. Douglas MacArthur Senior Vill., Inc.*, 508 F.2d at 381 (impossibility leads to "discharge by reason of impossibility—as well as the concomitant remedy (to the

24

discharge) of rescission"); *id.* ("Thus frustrated, Y may rescind the contract."). Nor is the doctrine

of partial impossibility, which provides that "[w]here only part of an obligor's performance is

impracticable, his duty to render the remaining part is unaffected if it is still practicable for him to

render performance that is substantial," any help to Condado. *In re Food Mgmt. Grp., LLC*, 372

B.R. 171, 209 (Bankr. S.D.N.Y. 2007) (quoting Restatement (Second) of Contracts § 270 (1981)).

The doctrine only applies "if . . . the obligee, within a reasonable time, agrees to render any

remaining performance in full and to allow the obligor to retain any performance that has already

been rendered." Restatement (Second) of Contracts § 270 (1981). Moreover, this doctrine is only

applicable "if the failure of performance would not be material," *id.* comment b, and the

Restatement's illustrations similarly give examples of burdenless substitute performance. Failure

to close on a time-is-of-the-essence contract is material failure of performance, so the doctrine

cannot be used, in effect, to make time not of the essence. *Rufeh v. Schwartz*, 50 A.D.3d 1000,

1001 (2d Dep't 2008) ("Where time is of the essence, performance on the specified date is a

material element of the contract, and failure to perform on that date constitutes, therefore, a

material breach of the contract." (internal quotation marks omitted)). Taking the Hotel on a

different date—especially one indefinitely in the future—is not substantial performance. After all,

in a short-sale of a hotel suffering ongoing operational losses and accruing debt service, changing

the date means imposing millions of dollars in additional losses. Because Condado's proposed

offer to *maybe* perform months after the Closing Date is not substantial performance, there is thus

no role for the partial impossibility doctrine here, especially without Posadas' consent; if

performance really were impossible, the contract is discharged, and if not, there was a breach.

Either way, there was no right to close still in existence for Condado to extend.

## **CONCLUSION**

44.    For the foregoing reasons, Condado has no right to close capable of extension under

11 U.S.C. § 108(b), and this case should accordingly be dismissed.

Dated: September 21, 2020          */s/ Aaron Marks*
New York, New York                 Aaron Marks, P.C.
                                   Joseph M. Sanderson
                                   Kimberly Pageau
                                   Jace A. Cearley
                                   **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:     (212) 446-4800
                                   Facsimile:     (212) 446-4900

                                   - and -

                                   Chad J. Husnick, P.C.
                                   Richard U.S. Howell, P.C. (admitted *pro hac vice*)
                                   **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   300 North LaSalle Street
                                   Chicago, Illinois 60654
                                   Telephone:     (312) 862-2000
                                   Facsimile:     (312) 862-2200

                                   *Counsel to Posadas de Puerto Rico Associates, L.L.C.*