UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                                :        Chapter 11
                                 :
CONDADO PLAZA ACQUISITION LLC, et al.,   :        Case No. 20-12094 (MEW)
                                 :
                    Debtors.       :        Jointly Administered

-------------------------------------------------------------------x

### AMENDED DECISION HOLDING THAT PURCHASE AND SALE AGREEMENT TERMINATED PRIOR TO THE PETITION DATE AND TERMINATING TEMPORARY RESTRAINING ORDER IN REMOVED ACTION

A P P E A R A N C E S :

TARTER KRINSKY & DROGIN
*Proposed Attorneys for Debtors*
  By:   Scott S. Markowitz
        Anthony Dougherty
        Jonathan E. Temchin

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
*Attorneys for Posadas de Puerto Rico Associates, L.L.C.*
  By:   Aaron Marks, P.C.
        Joseph M. Sanderson
        Kimberly Pageau
        Jace A. Cearley
        Chad J. Husnick, P.C.
        Richard U.S. Howell, P.C.

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

The Debtors in these cases are Condado Plaza Acquisition LLC ("**Condado**"), Condado Plaza Acquisition Lagoon LLC, and Condado Plaza Acquisition Ocean LLC. They are special purpose entities that are affiliated with Platinum Capital Partners and that were formed for the purpose of buying the Condado Plaza Hilton Hotel in San Juan, Puerto Rico. The current owner of the hotel is Posadas de Puerto Rico Associates, L.L.C. ("**Posadas**").

The parties entered into a Purchase and Sale Agreement dated November 20, 2019 (the "**PSA**"). The PSA calls for a purchase at a price of $31 million and Condado paid an initial deposit of $3.1 million into escrow. The closing was to occur by December 31, 2019 but the agreement gave the parties with the right to extend the Closing Date to February 28, 2020 under certain circumstances. Otherwise, the contract stated that "time is of the essence." PSA §§ 2.3(a), 14.21. The parties later agreed to several extensions of the Closing Date, and in connection with those extensions the deposits were increased to $5.1 million.

Posadas notified Condado by letter dated May 4, 2020 that the transaction was ready to close and that under the parties' prior agreements the Closing Date would be May 11, 2020. However, the closing did not occur. Posadas then issued a notice dated May 11, 2020, stating that Condado's failure to close was a default and that the PSA therefore was being terminated. The Debtors sent a letter disputing the purported termination and contending that the contract was still in force.

The gist of the parties' dispute relates to the effects of the Covid-19 pandemic on the operations of the hotel. The Debtors argue that they had agreed to buy a viable and operational hotel with employees and with substantial goodwill, and that Posadas was not ready to deliver that consideration in May 2020, as the hotel had been closed and layoffs had occurred due to the pandemic. At a hearing before this Court on September 22, 2020, Condado's counsel argued that Condado agreed to purchase property with a positive "goodwill" and that there was no positive "goodwill" to be transferred at the proposed closing in May. Posadas contends that Condado had agreed to buy the hotel "as is" and with no covenants as to its operating condition, that time was of the essence, that Condado had waived any closing conditions in a contract amendment executed in March 2020, and that Condado had no excuse for refusing to close.

2

The parties' disputes led to two separate litigations. On May 8, 2020, Condado filed suit in Puerto Rico and asked the court to modify the Closing Date requirements of the PSA. *See* Declaration of Aaron Marks [ECF No. 12] (the "**Marks Decl.**"), Ex. 38, at 5-7. Condado argued that it was legally impossible for Posadas to deliver an operational hotel in light of Covid-19 quarantine rules and that the closing date should be postponed until Posadas could do so. *Id.* Condado also obtained, on an *ex parte* basis, a *lis pendens* order that was conditioned on the filing of a $5 million bond and that, upon the filing of such a bond, would put a cloud on any sale of the property to another buyer. However, the Puerto Rico court declined to enter an injunction against a sale of the property.

On May 18, 2020, Posadas filed an action in the Supreme Court for the State of New York in Monroe County, which is located in western New York. Posadas asked the state court to enjoin Condado from continuing its Puerto Rico action on the ground that doing so was in violation of forum selection clauses in the PSA. The New York state court issued the anti-suit injunction in an order that was dated July 16, 2020 and entered on July 17, 2020. The New York court also denied a request by Condado for a stay pending appeal.

The court in Puerto Rico also separately considered, and approved, a motion to enforce the forum selection clause, and dismissed the action that had been filed in Puerto Rico after finding the forum selection clause was enforceable. Condado filed an appeal in Puerto Rico without first getting relief from the injunction that the New York state court had entered. The New York state court issued an Order on August 28, 2020 that directed Condado to show cause as to why it should not be held in contempt for violation of the anti-suit injunction. *See* Marks Decl., Ex. 43.

Meanwhile, Condado asked the New York state court for a temporary restraining order against a sale of the hotel, contending that Condado wished to obtain specific performance of the

contract of sale.  The state court issued an Order to Show Cause with a temporary restraining order on August 14, 2020.  *Id., Ex.* 16.  On August 28, 2020 the state court directed Condado to show cause as to why the restraining order should not be vacated and required Condado to file an undertaking in the amount of $9,200,590 in support of the restraining order that was then in effect. *Id.*, Ex. 42.  Condado informed the state court on September 2, 2020 that it was having trouble making arrangements for an undertaking but that it was working on getting a bond.  On September 8, 2020, after no bond had been filed, the state court advised the parties that an amendment to the temporary restraining order would be filed on September 10, 2020 if a bond were not posted by then.  *Id*., Ex. 47.

Debtors filed their chapter 11 bankruptcy petitions on September 9, 2020, one day before the deadline for the filing of an undertaking in the state court.  The Debtors stated that they intended to remove the Monroe County state court case to this Court and they have since filed a notice of removal, which I will discuss after I address other issues.  The Debtors also stated their intent to use section 108(b) of the Bankruptcy Code to extend the deadline for closing on a purchase of the hotel, assuming the seller could deliver the hotel in the condition that the Debtors contended was required by the PSA.

Posadas promptly filed a motion to dismiss the bankruptcy petitions or, alternatively, for relief from the automatic stay.  Posadas claims it is incurring expenses of $1,314,370 per month as a result of delays in the sale, which are made up of operating losses of $401,000 per month and financing costs of $913,370 per month.  I agreed to shorten notice for consideration of the motion to dismiss and scheduled it for a hearing on September 16, 2020.

At the September 16 hearing I noted that section 108(b) of the Bankruptcy Code would only apply if the PSA had not already terminated prior to the filing of the bankruptcy petitions.

Similarly, sections 362 and 365 of the Bankruptcy Code would not be relevant to the hotel if the PSA (and the Debtors' rights thereunder) had already terminated. Posadas claimed that the contract terminated as a matter of law, and I suggested that the Court make a prompt determination as to whether the issue could be resolved as a matter of law. The parties agreed, and I directed that they make further submissions. They made their respective filings on September 21, 2020, and after hearing argument on September 22, 2020 I directed them to make additional submissions on an issue that arose at the hearing. The parties made those additional submissions on September 24, 2020.

I have reviewed the PSA, the amendments thereto, and the parties' submissions, and this Decision sets forth my rulings on the legal issues. For the reasons set forth below, I hold that the Purchase and Sale Agreement terminated prior to the filing of the bankruptcy petitions.

## The Purchase and Sale Agreement

The Purchase and Sale Agreement is dated November 20, 2019. It is governed by New York law. PSA § 14.13. Condado Plaza Acquisition LLC was named as the buyer; the other two debtors were formed to participate in the sale and to take assignments of some of Condado's rights regarding portions of the hotel.

Under the PSA, Posadas agreed to sell the Condado Plaza Hilton Hotel and the land on which it is situated, together with an interest in a lease of certain land that apparently was used for parking. The Buyer also agreed to assume certain contracts, including a union contract that covered hotel employees. The assets to be purchased included additional items that were defined in the agreement as "Asset-Related Property." *Id.* § 2.1(b). "Asset-Related Property" included "to the extent assignable without consent, all other intangibles associated with the Properties, including, without limitation, goodwill . . ." *Id.* § 2.1(b)(x).

5

The agreed purchase price was $31,000,000.  *Id.* § 2.2(a).  Article X of the PSA described

certain adjustments to the Purchase Price that would be made as of the day preceding the Closing

Date; those adjustments essentially involved the proration of taxes, customer revenues, and other

expenses and revenues with the effect that such items would be allocated to the Seller for periods

prior to Closing and allocated to the Buyer for periods after the Closing.  Section 2.2(d) of the PSA

stated explicitly that "[n]o adjustment shall be made to the Purchase Price except as explicitly set

forth in this Agreement."  *Id.* § 2.2(d).

The PSA required Condado to make a deposit in the amount of $3.1 million, which was to

be held in escrow pending the closing.  *Id.* § 2.2(b) and (c).  The parties agreed that the Closing

would take place on December 31, 2019.  However, under certain conditions Posadas had the right

to adjourn the closing to a date no later than February 28, 2020, which was defined as the "Outside

Closing Date."  Condado similarly had a "one-time right" to adjourn the closing until February 28,

2020, which was defined as the "Buyer's Outside Closing Date."  *Id.* § 2.3(a).  Section 2.3 stated

in bold-faced capital letters that "**TIME SHALL BE OF THE ESSENCE WITH RESPECT**

**TO BUYER'S AND SELLER'S OBLIGATIONS UNDER THIS AGREEMENT**."  *Id.*  It

further stated that "[t]he Closing Date shall in no event occur later than the later of (i) the Outside

Closing Date and (ii) the Buyer's Outside Closing Date, as applicable, unless agreed in writing by

the parties hereto."  *Id.*  Section 14.21 of the PSA reiterated that "Seller and Buyer agree that time

is of the essence with respect to the obligations of Seller and Buyer under this Agreement."  *Id*.

§ 14.21.

Section 5.2 of the PSA listed conditions precedent to the performance of the Buyer's

obligations.  One such condition was that the Seller's representations and warranties would be true

and correct at Closing.  *See id.* § 5.2(a).  Another was that the Seller complied with all of its

6

obligations and covenants. *Id.* § 5.2(b). There were no specific conditions listed in Article V as to the condition of the hotel, its operating results, or its operating status at the time of closing, but some other provisions of the PSA discussed such matters.

First, Posadas covenanted and agreed in section 3.4 of the PSA that Posadas would "[u]se commercially reasonable efforts to cause Property Manager to operate and maintain the Property substantially consistent with the operation and maintenance of the Property over the previous three (3) month period." *Id.* § 3.4(a)(i). However, that provision went on to say that "[n]otwithstanding anything to the contrary contained herein, Seller shall not be required . . . to maintain operations at the hotel." *Id.*

Second, section 6.2 of the PSA listed items that Posadas was required to deliver at closing, including titles to various assets. Section 6.2(b) stated, however, that "[n]otwithstanding anything to the contrary contained herein, with respect to the Asset-Related Property, Seller shall use commercially reasonable efforts to transfer such Asset-Related Property at Closing, but the failure of any or all of such Asset-Related Property to be transferred and the applicable closing deliveries with respect thereto to be delivered by Seller at Closing shall not be deemed a failure of a condition precedent to Buyer's obligations to consummate the Closing." *Id.* § 6.2(b).

Third, section 7.3 of the PSA set forth a bold-faced "Disclaimer" in capital letters. It disclaimed any representation or warranty as to the accuracy or completeness of any information that had been provided to Condado and disclaimed all representations except as stated otherwise in the PSA.

Fourth, section 7.4(a) stated, in bold-faced capital letters, that "**EXCEPT AS EXPRESSLY SET FORTH HEREIN, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS OR IMPLIED OR ARISING BY**

OPERATION OF LAW, WITH RESPECT TO THE ASSETS OR THE CONDITION OF THE ASSETS.” *Id.* § 7.4(a).  It further provided that Condado would purchase the Assets at Closing “**IN THE THEN EXISTING CONDITION OF THE ASSETS, AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WRITTEN OR VERBAL REPRESENTATIONS OR WARRANTIES WHATSOEVER . . . OTHER THAN AS EXPRESSLY SET FORTH IN THIS AGREEMENT.**” *Id.*  Condado confirmed that its obligations “**SHALL NOT BE SUBJECT TO ANY CONTINGENCIES, DILIGENCE OR CONDITIONS EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.**” *Id.*

Section 7.4(b) of the PSA defined the term “Condition of the Assets” as used in Section 7.4(a).  Among other things, “Condition of the assets” included “**THE ECONOMIC FEASIBILITY, CASH FLOW AND EXPENSES OF THE ASSETS, AND HABITABILITY, MERCHANTABILITY, FITNESS, SUITABILITY AND ADEQUACY OF THE PROPERTY FOR ANY PARTICULAR USE OR PURPOSE (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY RENOVATION OR REDEVELOPMENT OF THE PROPERTY.)**” *Id.* § 7.4(b).

Fifth, section 13.1 of the PSA addressed certain “Employee Matters.”  Section 13.1(a) stated that “[t]he parties intend that there will be continuity of employment with respect to all of the Employees” and that in furtherance of that purpose “the Buyer shall take no action to cause the Seller or Property Manager to terminate the employment of any Employee, and neither the Seller nor Property Manager shall be under any obligation to terminate any Employee prior to or on the Closing Date.” *Id.* § 13(a).  Condado was also obligated to offer employment “to all Employees who remain employed on the day immediately preceding the Closing Date . . .” *Id.*

Article XII of the PSA described the circumstances under which the PSA would terminate and the consequences of a termination.  Section 12.1(a) of the PSA permitted Posadas to terminate the agreement in the event of a material breach or default by Condado in the performance of any of its obligations.  Condado was entitled to fifteen (15) business days' notice of such termination except in the case of a failure to make a required deposit, or a failure to pay the Purchase Price, a failure to deliver certain documents, or a failure to "acquire the Assets on the Closing Date."  *Id.* § 12.1(a).  The PSA provided that in the event of such a termination by Posadas the agreement "shall be null and void" and neither party would have further rights against the other, with the exception of provisions in the PSA that expressly survived termination.  *Id.* § 12.1(b).  In addition, if Posadas terminated the agreement under section 12.1(a), the Earnest Money deposit was to be paid to Posadas as liquidated damages for Condado's breach.  *Id*. § 12.1(c) and (d).  The receipt of such Earnest Money deposit was to constitute Posadas' sole and exclusive remedy, except that such provision "shall not limit Buyer's obligation to pay to Seller all attorney's fees and costs of Seller to enforce the provisions of this Section 12.1."  *Id.* § 12.1(d).

Section 12.2(a) of the PSA permitted Buyer to terminate the agreement "prior to the Closing" if any conditions precedent to Buyer's obligations were not satisfied "on or prior to the Closing Date" or if Posadas committed a material breach of its obligations.  *Id*. § 12.2(a).  Upon a termination on account of Posadas' failure to satisfy a condition precedent, Condado's "sole and exclusive remedy" was to receive a return of its Earnest Money deposit.  *Id*. § 12.2(b).  However, section 12.2(c) also gave Condado the right to pursue specific performance remedies in certain circumstances and under certain conditions.  It stated:

> In the event of a material breach by Seller as described in Section
> 12.2(a)(ii) beyond applicable cure periods, Buyer, at its option, as its sole and

> exclusive remedy, may either (i) terminate this Agreement, direct the Escrow
> Agent to deliver and the Escrow Agent shall, subject to Section 14.5, disburse
> the Earnest Money to Buyer, at which time this Agreement shall be
> terminated and of no further force and effect except for the provisions which
> explicitly survive such termination or (ii) seek to specifically enforce the
> terms and conditions of this Agreement; provided that such specific
> enforcement action must be initiated no later than thirty (30) days following
> such default by Seller.

*Id.* § 12.2(c).

In the event of a dispute as to the distribution of the Earnest Money deposit following a

termination, the Escrow Agent was directed to hold the escrowed funds until the receipt of a joint

written direction from the parties or the receipt of a final judgment of a court of competent

jurisdiction.  *Id*. § 14.5(b).

Section 14.10 of the PSA provided that the agreement "contains all of the terms agreed

upon between the parties hereto with respect to the subject matter hereof, and all understandings

and agreements heretofore had or made among the parties hereto are merged in this Agreement

which alone fully and completely expresses the agreement of the parties hereto."  *Id*. § 14.10.

## Subsequent Events and Amendments to the PSA

On December 18, 2019, Condado exercised its option to delay the Closing Date until

February 28, 2020, and paid an additional $1 million in Earnest Money at the time it did so, raising

the escrowed total to $4.1 million.  The parties later agreed to three amendments to the PSA.  It is

useful to discuss these amendments in chronological order and in the context of other undisputed

events.

1.    The United States Secretary of Health and Human Services declared the Covid-19

pandemic to be a public health emergency on January 31, 2020.  *See* Marks Decl., Ex. 7.

2.    The Centers for Disease Control and Prevention confirmed on February 26, 2020

that Covid-19 had been diagnosed in a patient in the United States.  *Id*., Ex. 8.

3.      The parties entered into the First Amendment to the PSA as of February 28, 2020.
They agreed that March 6, 2020 would be the "New Scheduled Closing Date" and that "Closing
shall be scheduled to occur on the New Scheduled Closing Date in accordance with the Purchase
Agreement."  *See* Marks Decl., Ex. 21, Recital C and § 1.  The parties also agreed to the forms of
the documents that would be exchanged at the Closing.  *Id*. § 2.  All other provisions of the PSA
were ratified and remained in effect without modification.  *Id*. § 6.

5.      The parties entered into a Second Amendment to the PSA as of March 5, 2020.  It
stated that "Buyer has informed Seller that it will not be prepared to close on March 6, 2020 (the
'Scheduled Closing Date')" while at the same time confirming that "Buyer has no rights under the
Existing Purchase Agreement to extend the Scheduled Closing Date."  *See* Marks Decl., Ex. 22,
Recital B.  However, Posadas agreed to a further extension of the Closing Date to March 17, 2020
in exchange for the deposit of an additional $1 million, raising the escrowed deposit to $5.1
million.  *Id.* § 1.  Condado also "waived all conditions precedent to Closing" and further agreed
that, "notwithstanding anything to the contrary contained in the Purchase Agreement," the
escrowed deposit would be payable to Posadas if the Closing did not occur on the New Scheduled
Closing Date, and that Condado "shall not have any right to object to the release of the Earnest
Money to Seller."  *Id*. § 2.  In all other respects the provisions of the PSA were ratified.  *Id*. § 6.

6.      The World Health Organization declared on March 11, 2020 that Covid-19
constituted a global pandemic.  *See* Marks Decl., Ex. 9.

7.      On March 11, 2020, the Governor of Puerto Rico declared a state of emergency in
Puerto Rico due to the imminent spread of Covid-19.  Marks Decl., Ex. 32.  On March 15, 2020,
the Governor issued an Order that required the closure of all governmental operations (except for

11

those related to essential services) and that required the closure of all businesses until March 30,

2020, with certain exceptions that did not relate to the hotel.  Marks Decl., Ex. 33.

8.      The parties entered into a Third Amendment to the PSA dated as of March 17, 2020.

The recitals noted that in light of the actions of governmental authorities in response to the Covid-

19 pandemic, the Closing would not occur on March 17, 2020.  *See* Marks Decl., Ex. 23, Recital

B.  Instead, the new scheduled Closing Date would be as follows:

> Upon the execution of this Amendment, the New Scheduled Closing Date
> for the Closing shall be the later to occur of (x) April 17, 2020 and (y) date
> that is five (5) Business Days following the applicable Governmental
> Authority permitting the operations of the Registry of Property, law firm
> offices and notary public in San Juan, Puerto Rico in accordance with the
> Purchase Agreement, provided that in no event shall the New Scheduled
> Closing Date be later than July 31, 2020 (the "Outside Date").

*Id*. § 1.  The parties again ratified all other terms of the PSA.  *Id*. § 4.

9.      The closure of governmental offices and businesses in Puerto Rico was extended

to May 3, 2020 and a series of additional restrictions were imposed.  *See* Marks Decl., Ex. 34.

10.     On May 4, 2020, Posadas notified Condado that the Governor of Puerto Rico had

authorized notaries and law offices to resume operations on May 4, which meant that the Closing

Date would be five business days later, or May 11, 2020.  Marks Decl., Ex. 25.  Condado

initially took issue with the calculation (asserting that the Closing Date should be May 8 rather

than May 11) *see* Marks Decl., Ex. 26, but at the hearing on September 22 Condado's counsel

agreed that the May 11 Closing Date had been calculated correctly under the terms of the Third

Amendment to the PSA.  In addition to its initial complaints about the date calculation, Condado

objected to the Closing Date in light of the continued pandemic and the risks of travel.  *Id.*

Finally, Condado declared that it intended to comply with the PSA but that in light of the Covid-

19 restrictions and their effects on "the Seller's ability to deliver the benefit that Buyer has

bargained for and that Seller has agreed to deliver" Condado rejected the proposal that a closing

occur on May 11. *Id.*

11.     Posadas responded by letter dated May 7, 2020 that the parties had already agreed

to the closing documents and that it was a simple matter for Condado to give its Puerto Rico

counsel the authority to complete the closing without the need for anyone else to travel.  Marks

Decl., Ex. 28.  Posadas' counsel also rejected Condado's arguments about the Closing Date,

arguing that nothing in the PSA required the delivery of a "going concern hotel" and that "time is

of the essence" with respect to the completion of the sale. *Id*.

12.     Condado did not appear at the scheduled May 11 Closing.  Posadas issued a

notice of termination (Marks Decl., Ex. 29), which Condado disputed as noted above.  Various

litigations then ensued as described above.

### New York Contract Interpretation Standards

Under New York law, contracts are interpreted and enforced in accordance with their

plain meaning and their clear and unambiguous terms.  *See Wallace v. 600 Partners Co.,* 658

N.E.2d 715, 717 (N.Y. 1995); *W.W.W. Assocs., Inc. v. Giancontieri,*, 566 N.E.2d 639, 642 (N.Y.

1990); *Am. Express Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613, 614 (App. Div. 1st Dep't

1990), *appeal denied* 77 N.Y.2d 807 (N.Y. 1991); *Schmidt v. Magnetic Head Corp.*, 468

N.Y.S.2d 649, 654 (App. Div. 2d Dep't 1983); *Rowe v. Great Atl. & Pac. Tea Co., Inc.*, 385

N.E.2d 566, 569-70 (N.Y. 1978).

Accordingly, a court will not abandon a common-sense interpretation of a contract on the

"[m]ere assertion by one [party] that contract language means something to him, where it is

otherwise clear, unequivocal and understandable when read in connection with the whole

contract . . ." *Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D.2d 191, 193 (1st Dep't 1995)

(citation and internal quotations omitted).  "[T]he rule is well settled that a court may not, under

the guise of interpretation, make a new contract for the parties or change the words of a written

contract so as to make it express the real intention of the parties if to do so would contradict the

clearly expressed language of the contract." *Rodolitz v. Neptune Paper Prods.*, 239 N.E.2d 628,

630 (N.Y. 1968) (reversing a "strained and untenable" interpretation that contradicted the plain

language of a tax apportionment clause in a contract between a lessor and lessee).

Furthermore, the only "intent" or "purpose" that is relevant in the interpretation of a

contract is the mutual intent that is discernible from the words that the parties actually used in

their agreement. *See Bloomfield v. Bloomfield*, 764 N.E.2d 950, 952-53 (N.Y. 2001) ("[A]s with

all contracts, we assume a deliberately prepared and executed agreement reflects the intention of

the parties. Further, while we must be concerned with what the parties intended, we generally

may consider their intent only to the extent that it is evidenced by their writing."); *Porter v.

Commercial Cas. Ins. Co.,* 54 N.E.2d 353, 356 (N.Y. 1944), *reargument denied*, 56 N.E.2d 122

(N.Y. 1944) ("What is in the mind of parties to a contract is evidenced by word or deed and must

be determined therefrom"); *Matter of Ahern v. South Buffalo Ry. Co.*, 104 N.E.2d 898, 907 (N.Y.

1952), *aff'd*, 344 U.S. 367 (1953) ("[It] is well-established contract law that in determining

whether the parties possessed the necessary intention to contract, an objective test is generally to

be applied. That means, simply, that the manifestation of a party's intention rather than the

actual or real intention is ordinarily controlling.")  As Judge Easterbrook explained in *Skycom

Corp. v. Telstar Corp.*, 813 F.2d 810 (7th Cir. 1987):

> "[I]ntent" does not invite a tour through [a party's] cranium, with [the party]
> as the guide . . . The intent of the parties to be bound must necessarily be
> derived from a consideration of their words, written and oral, and their
> actions.

*Id.* at 814-15 (internal quotations and citations omitted).

## Discussion

14

The essence of the Debtors' argument is that Posadas was not ready and able to deliver, at the scheduled May 11 Closing, an operating hotel (or, as Condado's counsel more recently put it, a hotel that had a positive "goodwill"), and that as a result the Closing Date was extended indefinitely and the PSA was still in force at the time these bankruptcy cases were filed. Condado's arguments are wrong as a matter of law for a number of independent reasons.

I. **Condado's Contentions About the Required Operating Condition of the Hotel and About the Transfer of "Goodwill" Are Contrary to the Plain Language of the PSA.**

Condado expressly agreed to purchase the hotel and related assets at the scheduled Closing "in the then existing condition of the Assets, as is, where is, with all faults, and without any written or verbal representations or warranties whatsoever . . . other than as expressly set forth in" the PSA. *See* PSA, § 7.4(a). Condado alleges that Posadas failed to comply with conditions in the PSA regarding the operating condition of the hotel, or regarding the "goodwill" associated with the property, but those contentions are contrary to the plain language of the PSA.

Section 3.4 of the PSA stated explicitly that "[n]otwithstanding anything to the contrary contained herein, Seller shall not be required . . . to maintain operations at the hotel." *Id.* § 3.4(a)(i). Condado's contention that Posadas was obligated to deliver an "operating" hotel at Closing is belied by this clear and unambiguous language. In an effort to evade that language, Condado focuses on the separate agreement in section 3.4 that Posadas would "[u]se commercially reasonable efforts to cause Property Manager to operate and maintain the Property substantially consistent with the operation and maintenance of the Property over the previous three (3) month period." *Id.* However, Condado acknowledges that the Covid-19 restrictions prevented Posadas from maintaining normal operations. At the hearing on September 22, Condado's counsel even conceded that the failure to maintain operations was due to regulatory restrictions and was not due to any fault on the part of Posadas.

15

Condado nevertheless continues to argue that Posadas' failure to maintain operations (through no fault of its own) nevertheless violated section 3.4.  Its argument goes something like this:  (a) section 3.4 required Posadas to use "commercially reasonable efforts" to maintain operations;  (b) the orders issued by the Puerto Rico authorities prevented Posadas from maintaining operations and thereby prevented Condado from using "commercially reasonable efforts" to keep the hotel open; and (c) therefore Posadas did not make "commercially reasonable efforts" to maintain operations and was in breach of the PSA.  This tortured interpretation of the "commercially reasonable efforts" provision is utterly preposterous.  If Condado were right, the provision would have contractually bound Posadas to maintain operations no matter what obstacles came in its way, including governmental shutdown orders.  Interpreting the provision in that manner would be contrary to the plain statement that "notwithstanding" any other provision in the PSA, Posadas would "not be required" to maintain operations.

The words "commercially reasonable efforts" plainly are limitations on what Posadas was required to do.  *See Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 471 (S.D.N.Y. 2018), *aff'd*, 769 F. App'x 40 (2d Cir. 2019).  Those words amounted to an agreement that Posadas was not required to do things that it was unable to do or that it would not have made commercial sense to do.  It plainly would not have been "commercially reasonable" for Posadas to conduct operations in defiance of governmental shutdown orders.  As a matter of law, the failure to offer a hotel in "operating condition" on May 11 – which Condado concedes was due to external regulations – did not constitute a failure by Posadas to use "commercially reasonable efforts" to maintain operations.

Condado's other effort to evade its obligation to purchase the Assets at Closing in their "then existing condition," without representations or warranties, is its contention that the

agreement to purchase "goodwill" also required the delivery of a hotel in operating condition. More specifically, Condado's counsel took the position at the September 22 hearing that Posadas was required to offer a property with at least some employees and some current customers. But if "goodwill" were to be interpreted in this manner it would run afoul of the plain statement in section 3.4 that, "notwithstanding" any other provision of the PSA, Posadas was not required to maintain operations at the hotel.

The "goodwill" argument is contrary to the terms of the agreement in other ways as well. The PSA provided that Posadas would transfer "goodwill," but there was no representation or warranty as to what the value of such "goodwill" would be, and the parties agreed that assets would be transferred without any representation or warranty unless otherwise explicitly stated in the PSA. Condado now wants to interpret the obligation to transfer "goodwill" as an agreement to transfer assets of a particular value, or in a particular operating condition, or with a certain number of customers or employees, but all of those arguments are just attempts to impose an obligation to deliver Assets having a particular value, and section 7.4 of the PSA stated in the clearest possible terms that Posadas was making no representations or warranties as to the Assets or as to the value of the Assets.[1]

---

[1]    During the hearing on September 22, 2020, Condado's counsel acknowledged that the PSA contained no representations or warranties as to the value of "goodwill," and conceded that Condado would have been obligated to close if "goodwill" had any positive value at all, no matter how small. The idea that the delivery of a hotel with a goodwill of one dollar would have complied fully with the PSA, but that the delivery of a hotel that allegedly had a goodwill of zero was somehow a material breach of Posadas' obligations, is absurd. Counsel also conceded that Condado would have been obligated to close if the hotel had any employees or guests, but Condado's own May 6, 2020 letter conceded that the hotel still had approximately 20 employees and occupancy in 7-10 rooms of the Ocean Tower. *See* Marks Decl, Ex. 26.

Furthermore, "goodwill" is listed as an "intangible" asset in the PSA and as an "Asset-Related Property." Condado contends that Posadas was unable to offer a hotel with a "positive" goodwill on May 11 (while again acknowledging that this was not due to any fault on Posadas' part). But in that case, the PSA states explicitly that Condado was still obligated to close. Section 6.2 of the PSA made clear that Posadas would use "commercially reasonable efforts" to transfer Asset-Related Property (including goodwill) at Closing, but that the failure to transfer "any or all" of such Asset Related Property "shall not be deemed a failure of a condition precedent to Buyer's obligations to consummate the Closing." *Id.* § 6.2(b). Even if there were any merit to Condado's suggestion that Posadas was not able to transfer a positive goodwill on the Closing Date, the PSA made clear that Condado was obligated to proceed.

Condado contends that Posadas repudiated and thereby breached the contract by sending a termination notice. However, the termination notice was not sent until after Condado failed to complete the purchase of the hotel by the specified Closing deadline. Condado's own failure to close cannot be excused unless there was a breach that preceded the scheduled closing. If Posadas was not itself in breach at the time of closing, then Condado's failure to close by the "time of the essence" Closing Date was a material breach that entitled Posadas to terminate the PSA. *See* PSA § 12.1; *see also In re New Breed Realty Enters.,* 278 B.R. 314, 322 (Bankr. E.D.N.Y. 2002) (a failure to close by a "time of the essence" closing date is a material breach). Posadas' issuance of a termination notice was just an exercise of contractual rights, not a breach or repudiation of contractual obligations.

Condado has also argued at times that Posadas violated implied contractual obligations of "good faith" by demanding a Closing in May. However, Posadas merely scheduled a Closing using the procedure to which the parties had previously agreed. Contractual "good faith"

18

obligations cannot be invoked to change the explicit terms of an agreement and thereby to impose an obligation on Posadas to delay a Closing notwithstanding the "time of the essence" provisions in the PSA. *Nynex Corp. v Shared Resources Exch.*, No. 14577/89, 1990 WL 605347, at *6 (Sup. Ct. Westchester Cnty., Sept. 10, 1990) ("[T]he implied covenant of good faith and fair dealing does not provide a court carte blanche to rewrite the parties' agreement. Thus, a court cannot imply a covenant inconsistent with terms expressly set forth in the contract. Nor can a court imply a covenant to supply additional terms for which the parties did not bargain"); *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 70 (E.D.N.Y. 2002) ("[A] party that has acted in compliance with the rights expressly provided in the governing contract cannot be held liable for breaching an implied covenant of good faith"); *Fordham Paradise, LLC v ABI Property Partners, LP XXVI*, 306 A.D.2d 178, 179 (2003) (affirming lower court decision which held, as a matter of law, that defendant-seller of property did not violate covenant of good faith and fair dealing when it negotiated with other prospective purchasers after the plaintiff failed to timely exercise option to purchase property under a time-of-the-essence contract.) That is especially true since the formula for calculating the Closing Date had been negotiated and agreed to in a contract amendment that was executed at a time when the Covid-19 shutdowns were already in place.

Accordingly, there was no failure by Posadas to comply with the terms of the PSA. It was Condado who failed to complete the transaction by the required "time of the essence" date.

## II.    Condado Waived All Conditions to Closing.

Even if there were any merit to Condado's suggestions that Posadas did not comply with contractual conditions regarding the operating condition of the hotel at Closing or regarding the value of "goodwill" at Closing, Condado expressly waived any and all "conditions" to closing in the Second Amendment to the PSA. Marks Decl., Ex. 22 § 2. Condado further agreed in that Amendment that the escrowed deposit would be payable to Posadas if the Closing did not occur

on the New Scheduled Closing Date, and that Condado "shall not have any right to object to the release of the Earnest Money to Seller." *Id*.  The Second Amendment was dated as of March 5, 2020, but it was ratified by the Third Amendment on March 17, 2020 – which occurred after the Governor of Puerto Rico had issued the first shutdown order on March 11, 2020.  So even if the delivery of a hotel in "operating" status or the delivery of a "positive" goodwill were conditions to Condado's obligations to close the transaction, those conditions were waived.

### III.  <u>Even if Condado Were Right, Termination Is Its Only Available Remedy</u>.

Even if Condado were right about the condition of the Assets and the requirements of the PSA, that would not have entitled Condado to a postponement of the Closing Date.  The PSA was subject to "time of the essence" provisions.  "When a contract states that time is of the essence, the parties are obligated to comply strictly with its terms."  *New Colony Homes, Inc. v. Long Island Prop. Grp., LLC*, 21 A.D.3d 1072, 1072-73 (2d Dep't 2005).  After several extensions the Closing was to be on May 11, and the Closing did not occur.

If (as Condado contends) Posadas failed to comply with the PSA, then Condado's "sole and exclusive" options were (a) to terminate the PSA, or (b) to seek specific performance within thirty days.  *See* PSA § 12.2(c).  Condado has purported to seek "specific performance" in a counterclaim that it filed in the state court in August 2020, but Condado actually has sought no such thing.

Specific performance is a remedy that is only available if, among other things, (1) Posadas was "able but unwilling" to convey the property on the terms set forth in the contract on the "time of the essence" Closing Date, and (2) Condado was ready, willing and able to accept the conveyance on that date.  *See Fallati v. Mackey*, 31 A.D.3d 879, 880 (3d Dep't 2006), *denying leave to appeal*, 7 N.Y.3d 711 (2006); *Consol. Edison Co. of N.Y. v. Cantor*, 18-cv-02267 (NSR), 2019 U.S. Dist. LEXIS 148643, *15-16, 2019 WL 4142064 (S.D.N.Y Aug. 30, 2019); *No. 1*

*Funding Ctr. v H & G Operating Corp.*, 853 N.Y.S.2d 178, 180–81 (App. Div. 3d Dep't 2008) (holding that defendant was entitled to summary judgment dismissing action for specific performance where, on a time-of-the-essence contract, defendant was able to close on the law date but plaintiff was not).  In fact, however, it was Condado (not Posadas) that refused to proceed on May 11.  Furthermore, Condado's counsel conceded on September 22 that the events that gave Condado pause about the May 11 closing (the Covid-19 pandemic and related governmental actions) were beyond the control of Posadas, and that Posadas was not capable of delivering what Condado wanted on May 11 (namely, a hotel in an operating condition).  *See Calligar v. Fradkoff*, 154 A.D.2d 495, 498 (2d Dep't 1989) (specific performance was not available to a purchaser where the seller was "unable" to convey property in accordance with contract terms due to events beyond the control of the seller).  In short, Condado does *not* contend that Posadas failed to deliver something that Posadas actually had the power to deliver on May 11, or that Condado actually wanted to purchase the property that Posadas was able to convey on that date.

What Condado has actually sought, in the guise of its nominal request for "specific performance," is an extension of time with which to evaluate the hotel's prospects in light of the continued Covid-19 pandemic, and in which to determine whether Condado can (or desires) to complete the purchase.  That extension of time runs counter to the explicit "time of the essence" provisions in the PSA.  Condado's professed request for "specific performance" has at all times been contingent on receiving a hotel in an "operating condition" that Condado determines to be satisfactory.  Condado's professed readiness, willingness and ability to complete the purchase on May 11 is in reality nothing more than a statement of confidence that Condado *would have been* willing and able to finance and to complete the agreed-upon deal on May 11 *if* the Covid-19

pandemic had not intervened.[2]  Similarly, Condado's counsel acknowledged during the hearing

that Condado could not complete a purchase now or in the reasonable future without arranging

financing that Condado does not presently have.  As a result, Condado's contentions that it is

ready, willing and able to close are in reality just a statement of confidence that Condado *would*

be willing and able to close the transaction in the future *if* circumstances change dramatically from

what they presently are.

The fact that Condado has attached such conditions to its willingness to proceed is

inconsistent with a request for specific performance.  *See M&E 73-75, LLC v. 57 Fusion, LLC*,

153655/12, 11156, 2020 N.Y. App. Div. LEXIS 4459, at *8-10 (1st Dept. July 30, 2020) (purchaser

of real property not entitled to specific performance where it claimed that it was ready, willing and

able to close but only on the condition that seller cure defect in title and remedy other alleged

deficiencies).  There is no assurance that events will change to Condado's satisfaction or that

Condado will have either the desire or the ability to complete the purchase at any time in the

reasonably near future.  There is no commitment by Condado to close the transaction if

circumstances do not change or if Condado's contract claims about the required "operating

condition" of the hotel and about "goodwill" are rejected.  Condado wants Posadas to bear the

operating losses, taxes and financing expenses of ownership while everyone waits to see if things

change.  But in light of those costs, even a belated purchase would hardly put Posadas in the

position that it would have occupied if the closing had occurred in May 2020 as agreed.

---

[2]    Notably, Condado stated in an email dated April 8, 2020 that "credit has dried up" and that a
       reduced price of $16 million "is what we can accomplish in these unfortunate times."  *See*
       Marks Decl., Ex. 24.

In short, Condado seeks to change the "time of the essence" provisions of the contract (not to enforce them), and to change its commitment to buy the property into a prolonged option to do so. Its purported request for "specific performance" is a hollow invocation of words and a thin disguise for a request that (as Condado itself acknowledged in its papers in the Puerto Rico action) is actually a request to modify the PSA rather than to enforce it.

Furthermore, even if Condado's nominal request for specific performance were to be treated as an actual request for specific performance, the request was not made within the thirty-day time limit specified in the PSA. The only action that Condado filed within the relevant thirty-day period was an action in Puerto Rico. Condado admittedly sought to modify the contract in that action and did not seek specific enforcement. The purported "specific enforcement" counterclaim that Condado filed in New York state court on August 7, 2020 was filed long after the thirty-day period had expired.

Condado argues that its specific performance counterclaim "relates back" to the date of filing of the state court action (May 18, 2020) pursuant to CPLR § 203(d) and that the request for specific performance therefore was timely. CPLR § 203 prescribes the method in which time is calculated for purposes of applying a statute of limitation. *See* N.Y.C.P.L.R. § 203. It states:

> (d) Defense or counterclaim. A defense or counterclaim is interposed when a pleading containing it is served. A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed.

The problem with Condado's argument is that section 203(d) of the CPLR deals with the timeliness of a "claim" under applicable statute of limitations periods. "Specific performance" is not a stand-alone "claim." Instead, specific performance is a potential remedy for a breach of contract.

23

*Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 112 A.D.3d 78, 86 (1st Dep't 2013). Nobody is contending that Condado is time barred from arguing that Posadas allegedly breached the PSA. The time limits set forth in the PSA were not time limits on breach of contract "claims," but instead were time limits on the assertion of specific performance as a *remedy*.

New York courts have consistently held that contractual limitations on available remedies are enforceable as they are written. *See Mehlman v. 592-600 Union Avenue Corp.*, 46 A.D.3d 338, 343 (1st Dep't 2007). Accordingly, courts "may not look beyond the agreed-upon remedies to award the buyer specific performance in circumstances other than those in which the parties agreed it would be available." *Highbridge House Ogden LLC v. Highbridge Entities LLC*, 145 A.D.3d 487, 487 (1st Dep't 2016); *see also 101123 LLC v. Solis Realty LLC*, 23 A.D.3d 107, 113 (1st Dep't 2005). In fact, it is permissible in New York to do away with "specific performance" as a remedy in its entirety. *See In re Delphi Corp.*, Case No. 05-44481 (RDD), Adv. Procs. 08-01232-rdd, 08-1233-rdd, 2008 WL 3486615, at *12 (Bankr. S.D.N.Y. Aug. 11, 2008), *modifying opinion*, 2008 WL 5155561 (Bankr. S.D.N.Y. Nov. 7, 2008), citing *Deutsche Lufthansa AG v. The Boeing Co.*, No. 06 CV 7667 (LBS), 2006 WL 3155273, at *4 (S.D.N.Y. Oct. 30, 2006), quoting *Rubinstein v Rubinstein*, 23 N.Y.2d 293, 298 (1968) (recognizing long standing rule in New York that a contract may preclude the remedy of specific performance if it provides that a specific damage remedy is the sole and exclusive remedy). Treating CPLR § 203(d) as though it invalidates contractual limitations on *remedies* would be contrary to this repeatedly enforced New York contract principle. Condado has not cited any decisions in which a New York court has held that CPLR § 203(d) invalidates (or has any bearing upon) a contractual limit on a particular remedy. The better view is that while a "claim" may not be barred under the circumstances set forth in CPLR § 203(d), a contractual limit on particular remedies is nevertheless enforceable as written.

Condado has argued that the thirty-day limit on specific performance is unenforceable because the time limit was unreasonably short.  But as noted above it is permissible in New York to do away with the specific performance remedy in its entirety.  A time limit upon such a remedy is a lesser imposition and is not inherently unreasonable, particularly when agreed to by sophisticated entities with capable and sophisticated counsel.  In *Highbridge House*, for example, the Appellate Division affirmed the enforcement of a contractual provision that stated that specific enforcement could only be sought within forty-five days after an alleged breach.  145 A.D.3d at 487; *see also SDK Prop. One, LLC v QPI-XXXII, LLC*, 143 A.D.3d 800, 801-802 (2d Dep't 2016) (enforcing 120-day deadline to commence action for specific performance).  Condado had the knowledge, means and ability to pursue litigation almost immediately, and certainly it had the ability to comply with the thirty-day time limit if "specific performance" had really been what Condado wanted.

Condado also argued in its September 24 submission that Posadas sent a notice of termination on May 11, 2020 and that Condado's obligation to comply with the time limit in section 12.2(c) of the PSA did not survive that termination.  However, the whole basis for Condado's "specific performance" argument is Condado's contention that the termination notice was without effect and that the contract is still in force.  Posadas cannot have it both ways.  Either the termination was not effective (in which case the time limit for seeking specific performance as a remedy is applicable), or the termination notice was effective, in which case "specific performance" no longer is available.  *See Frey v. Rose,* 51 A.D.3d 859, 861 (2d Dep't 2008) (if a contract has terminated, specific performance is no longer available).

In the absence of a timely and proper request for specific performance, Condado's only remedy for the alleged breaches by Posadas is termination of the PSA.  *See* PSA § 12(c).

Accordingly, even if Condado were right about Posadas' alleged breaches of contract, that would not entitle Condado to an extension of the "time of the essence" Closing Date.

**IV.    Condado's Arguments About "Frustration of Purpose," "Failure of Consideration" and "Impossibility" or "Commercial Impracticability" Do Not Support An Extension of the Time-of-the Essence Closing Date.**

Condado has contended at various points in its battles with Posadas (including, for example, in papers it filed with the New York state court) that Posadas could not convey "the benefit of the bargain" on May 11, 2020 and as a result there was a "failure of consideration," "commercial impracticability" and a "frustration of purpose" that relieved Condado of its obligation to close. *See, e.g.,* "Defendants-Appellants' Memorandum of Law in Support of Their Emergency Application for Interim Stay and To Modify, Limit, Vacate or Stay the Preliminary Injunction," submitted as Marks Decl. Ex. 11, at 4. But even if those legal doctrines were applicable here, and even if they would support a rescission or a termination of the PSA, they would not support the postponement of the Closing Date that Condado seeks.

"Frustration of purpose" is a doctrine that offers a defense to the enforcement of a contract when "the reasons for performing the contract cease to exist due to an unforeseeable event which destroys the reasons for performing the contract." *See Structure Tone v. Universal Servs. Grp, Ltd.*, 929 N.Y.S.2d 242, 246 (App. Div. 1st Dep't 2011). In order to be invoked, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, the transaction would have made little sense. It is not enough that the transaction will be less profitable for an affected party or even that the party will sustain a loss. *Rockland Dev. Assocs. v. Richlou Auto Body*, 570 N.Y.S.2d 343, 344 (App. Div. 2d Dep't 1991). Nor is the defense available if the terms of the contract impose the relevant risks on one of the parties. *Strauss v. Long Island Sports, Inc.*, 401 N.Y.S.2d 233, 238 (App. Div. 2d Dep't 1978). There must be a showing that a circumstance that induced the contract no longer exists, and that circumstance must be the very

foundation of the contract. *Pettinelli Elec. Co., Inc. v. Bd. of Ed. Of City of New York*, 391 N.Y.S.2d 118, 119 (App. Div. 1st Dep't 1977).

There is good reason to be skeptical about Condado's argument. Condado contends that its receipt of an "operating hotel" was the "very foundation of the contract," even though the PSA itself expressly disclaimed any obligation to maintain operations at the hotel. Condado also claims that the effects of the Covid-19 pandemic on the hotel's operations were unforeseeable, even though the entire PSA was reaffirmed in mid-March 2020, after the pandemic had begun and after the first shutdown orders had been issued by the Governor of Puerto Rico. But I need not decide those issues, for Condado has identified no support for the proposition that "frustration of purpose" arguments can be used to extend a Closing Date in the face of express "time of the essence" clauses. Either the purpose was completely frustrated as of the scheduled closing in May 2020, or it was not. If the purpose was not frustrated, then Condado was obligated to close. If the purpose was frustrated, then Condado has a defense to enforcement of the PSA and an argument as to the recovery of the escrowed deposit. But the Closing Date deadline still applied. Either way the contract came to an end because the Closing did not occur.

"Failure of consideration" is a doctrine that permits rescission of a contract if a party receives little or nothing of value. *Faunus Grp. Int'l, Inc. v. Ramsoondar*, No. 13 Civ. 6927 (HB), 2014 WL 2038884, at *3 (S.D.N.Y. May 16, 2014). The doctrine does not apply if the alleged failure of consideration is a risk that the party took under the terms of the contract. *Cobalt Multifamily Investors I, LLC v. Bridge Capital (USVI), LLC*, No. 06 Civ. 5738 (KMW)(MHD), 2007 WL 2584926, at *7 (S.D.N.Y. Sept. 7, 2007). Again, there is good reason to be skeptical of Condado's argument that a large ocean-front hotel had "little" or "no" value just because it was temporarily closed. In April 2020, Condado itself expressed a willingness to complete the

27

purchase at a reduced price of $16 million.  But I need not decide that issue, because once again I know of no authority for the proposition that "failure of consideration" can be invoked as a reason to extend a time-of-the-essence closing date.  Either the consideration to be delivered on May 11 was sufficient (in which case Condado was obligated to close), or it was not (in which case Condado's remedy was to argue that the PSA was at an end.)  Either way the Closing Date was not extended and the contract came to an end.

New York courts excuse a party from performing obligations that are "impossible" to perform, but "impossibility" does not excuse performance of a contract merely because the performance would be burdensome or unprofitable.  *See Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902 (1987); *see also 407 East 61st Garage v Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 282 (1968).  Instead, performance is excused only when there has been a destruction of "the subject matter of the contract or the means of performance" such that performance is "objectively impossible."  *Kel Kim Corp.,* 70 N.Y.2d at 902.  Condado has also argued that the performance of the PSA was "impracticable."  "Impracticability" is a test that is used in the Uniform Commercial Code as a substitute for the traditional contract defense of "impossibility."  *See* N.Y.U.C.C. § 2-615(a).  It is not so clear whether "commercial impracticability," as opposed to traditional notions of "impossibility," is really a separate contract defense under New York law outside the context of the Uniform Commercial Code.  *See Kel Kim Corp.*, 70 N.Y.2d at 902 (referring to commercial impracticability defenses generally but discussing the defense in New York solely in terms of common law "impossibility" doctrines); *Clarex Ltd. v. Natixis Sec. Ams., LLC*, No. 1:12-cv-7908-GHW, 2014 U.S. Dist. LEXIS 121335, at *31 (S.D.N.Y. Aug. 29, 2014) ("New York courts do not appear to recognize commercial impracticability as a separate defense to the doctrine of impossibility; rather, impracticability is treated as a type of impossibility and construed in the same

28

restricted manner.")   There is also reason to be skeptical of Condado's arguments about "impossibility" or "impracticability."  Condado contends that the pandemic reduced the value of the hotel and that the effect was unforeseeable, but Condado reaffirmed the contract in mid-March, when the pandemic was underway and the order closing the hotel was already in effect.  I need not reach those issues, however.  As with the "frustration of purpose" and "failure of consideration" arguments, there is no support for the proposition that "impossibility" or "impracticability" arguments can be invoked to provide an extension of a time-of-the-essence Closing Date.  The Closing Date deadline was itself a material provision of the contract.  Either the contract could be performed on the Closing Date (in which case Condado was obligated to close), or it could not be performed on that date (in which case the parties were excused from their respective obligations).  In either case the "time of the essence" Closing Date was not extended.

*          *          *

For each of the foregoing reasons, I hold that the PSA terminated as of May 11, 2020.  Condado may argue that "frustration of purpose," "impossibility/impracticability" and/or "failure of consideration" doctrines excused its performance, and it may argue that the provisions of the PSA that call for Posadas to retain the escrow deposit should not be enforced on those grounds.  As a matter of law, however, there is no merit to Condado's contentions that those doctrines can be invoked to provide an extension of the time-of-the-essence deadline for closing.  Similarly, as a matter of law there is no merit to Condado's contentions that Posadas breached the PSA, or (even if Posadas did so) that Condado preserved any remedy for those alleged breaches other than termination of the PSA.

Since the PSA terminated long before the filing of the bankruptcy petitions, sections 108(b) and 365 are not applicable.  In addition, section 362 of the Bankruptcy Code is not applicable to

the Assets or to a sale of the Assets by Posadas to another buyer. Section 362 does, however, apply to the escrowed deposit, which shall remain in escrow pending a determination of the issues set forth above.

One other matter needs to be addressed. The underlying state court action was filed in Monroe County, New York. Monroe County is part of the Western District of New York. *See* 28 U.S.C. § 112(d). If a federal court has jurisdiction of a state court case under section 1334 of Title 28 (*i.e.,* if the case arises under the Bankruptcy Code, or if it arises "in" a bankruptcy case, or if it is "related to" a bankruptcy case), then section 1452 of Title 28 permits a party to remove the action "to the district court for the district where such civil action is pending." 28 U.S.C. § 1452. The removal petition must be filed with the district court "within which such action is pending." 28 U.S.C. § 1446. By their terms, sections 1446 and 1452 authorized a removal to the United States District Court for the Western District of New York. However, Condado filed a removal petition that purported to remove the case from Monroe County directly to the District Court for the Southern District of New York. The SDNY District Court then referred the purportedly removed action to me pursuant to ordinary practices.

The removal procedure was improper. If Condado wanted the action to be transferred to this Court, the proper procedure would have been to remove the action to the District Court for the Western District of New York and then to ask that court to transfer the case to the District Court for the Southern District of New York, which then could refer the matter to this Court.

In an earlier version of this Decision I ruled that I do not properly have jurisdiction of the state court action because the removal procedure was unauthorized and therefore ineffective. However, I was not aware at the time of that Decision that Posadas had formally waived any defects in the removal procedure. Posadas has also now brought to my attention

decisions holding that a removal to the wrong district is a procedural defect that is waivable.  *See*

*Cardona v. Mohabir*, No. 14 Civ. 1596 (PKC), 2014 WL 1088103, at *1 (S.D.N.Y. Mar. 18, 2014)

(citing cases); *Port Auth. of N.Y. & N.J. v. Am. Warehousing of N.Y., Inc.*, No. 04 Civ. 6092 (GEL),

2004 WL 2584886, at *1 (S.D.N.Y. Nov. 10, 2004).  During a conference on October 8, 2020

Condado's counsel acknowledged that the defects in the removal procedure had been waived and

that the state court action was properly before this Court.

I therefore retract the portion of the prior Decision that held that I did not have jurisdiction

over the removed state court action.  That removed action is now before me.  The parties

acknowledged during the conference yesterday that the existing temporary restraining order serves

no proper purpose in light of my rulings, and I will therefore enter an amended order that also

terminates the existing temporary restraining order.

The parties also indicated on October 8, 2020 that in light of my rulings they believed the

bankruptcy case should be dismissed and the state court action should then be remanded to the

state court to decide the issues that I left open regarding the parties' rights to the deposit that is

held in escrow.  Condado stated that it did not intend to appeal from my rulings that the contract

terminated in May 2020.  Condado also agreed that any dismissal order would provide that my

rulings and orders would survive the dismissal.  *See* 11 U.S.C. § 349(b).  I will grant such relief

upon the consent of the parties.

Separate Orders will be entered that reflect the rulings set forth in this Amended Decision.

Dated: New York, New York
       October 9, 2020

/s/Michael E. Wiles
Hon. Michael E. Wiles
United States Bankruptcy Judge